## UNITED STATES v. CRUIKSHANK et al.

District Court, S. D. New York.
Jan. 23, 1931.

Robert E. Manley, Acting U. S. Atty., of New York City (G. B. Schoonmaker, of New York City, and C. M. Charest and Percia E. Miller, both of Washington, D. C., of counsel), for plaintiff.

Stewart & Shearer, of New York City (Harry J. Campaign, of New York City, of counsel), for defendants.

PATTERSON, District Judge.

Suit in equity is brought to collect an additional estate tax alleged to be owing to the United States under the Revenue Act of 1918 (40 Stat. 1057). The defendants are William M. Cruikshank and Henry C. Drayton, individually and as executors of the estate of Charlotte Augusta Haig, and United States Trust Company of New York, which is trustee of said estate. Drayton was not served. The facts have been presented by written stipulation.

The decedent died on July 30, 1920. On July 28, 1921, pursuant to the Revenue Act of 1918 then in force, her executors filed an estate tax return, showing a tax of $28,929.39, which sum was paid by them at the same time. Certain features of this return will be discussed later. On December 7, 1921, the executors (by their attorneys) filed a written application for determination of the tax within one year and for discharge of personal liability. This application was made under section 407 of the Revenue Act 1921 (42 Stat. 281), which had become effective on November 23, 1921. There had been no similar provision in the 1918 act. The relevant portion of this section is as follows: "If the executor files a complete return and makes written application to the Commissioner for determination of the amount of the tax and discharge from personal liability therefor, the Commissioner, as soon as possible and in any event within one year after receipt of such application, shall notify the executor of

the amount of the tax, and upon payment thereof the executor shall be discharged from personal liability for any additional tax thereafter found to be due, and shall be entitled to receive a receipt or writing showing such discharge. * * * "

The Commissioner did not audit the return or notify the executors of the amount of the tax within one year. It was not until over three years had passed that the executors received any notice of a deficiency in the tax. Meanwhile, however, the Commissioner had written to the executors several letters, the first of which is dated May 31, 1922, to the effect that among the deductions claimed in the return were several items that were only estimated, and that before final audit could be made he should be advised of the sums actually paid. The executors replied to some of these letters, furnished certain data, and stated that certain other information would be furnished later. Despite several later requests for this information, it was not given. Finally, the Commissioner went ahead with his audit without the additional data, and on February 19, 1925, gave the executors notice of a tentative determination of tax deficiency in the amount of $6,456.04. The executors filed a protest and an amended protest, which set before the Commissioner for the first time the actual payments in place of the estimated payments. The Commissioner thereupon, on April 14, 1925, notified the executors that their protest had been sustained, and that the deficiency was only $4,541.53. They were also advised that appeal might be filed with the Board of Tax Appeals within sixty days.

The executors paid no attention to this notice. They did not file an appeal, nor did they pay the deficiency. They had already, on November 23, 1923, after paying debts and administration expenses and retaining commissions for their own services, turned over the entire net assets remaining in the estate to the United States Trust Company, the trustee named in the will. This was done pursuant to decree of the Surrogate's Court of New York county.

The Commissioner never made an assessment of the tax. The only further effort to collect the deficiency prior to institution of suit was a terse demand, made on July 12, 1926, upon United States Trust Company for payment. Suit was commenced on July 21, 1926, a few days short of five years from the filing of the return.

The bill of complaint, after setting forth the facts as to the incidence of the tax and as to possession by the trustee of assets of the estate, alleges that the unpaid amount is a lien upon such assets. The relief demanded is that it be adjudged that there is due and owing to the United States the sum of $4,541.53, with interest; that it be further adjudged that the estate assets in the hands of the trustee are subject to a lien in favor of the United States; and that, unless the tax be paid, the estate assets be applied to the satisfaction of the tax. By an amendment to the bill, it is alleged that the executors paid debts owed by the decedent, without satisfying the debt owed to the United States in violation of section 3467 of the Revised Statutes (31 USCA § 192), and that they are therefore personally liable for the tax.[1]

It is conceded by the defendants that the values placed by the Commissioner on items constituting the gross estate were correct, and it is not disputed that his final adjustments were in each instance proper, and that there is an unpaid balance of estate tax in the amount of $4,541.53. The defendants contend, however, that for several reasons they are not liable for this unpaid balance, and that this suit is not maintainable against them.

█ As a general proposition, it cannot be disputed that an executor who distributes an estate without payment of the estate tax becomes personally liable for the tax. Indications of such a liability are to be found in the 1918 act and in all later acts, but it is sufficient to cite section 3467 of the Revised Statutes. It is likewise clear that the tax is a lien for ten years upon the gross estate (Revenue Act 1918, § 409 [40 Stat. 1100], and similar provisions in later acts), and that the United States may enforce its lien by sale in legal proceedings. Page v. Skinner (C. C. A.) 298 F. 731. It is also clear that the statute of limitations on collection of the tax by proceedings in court had not run when this suit was commenced. The period was five years (Revenue Act 1921, § 1320 [42

---

[1] This amendment was irregular. It was made long after answers had been filed by the defendants, and the plaintiff obtained neither consent of the defendants nor leave of the court as required by Equity Rule 28 (28 USCA § 723). All that happened was that a copy of the amendment was served upon the defendants' attorneys, precisely as if the plaintiff had the right to amend the bill as of course. No answers to the amendment were filed. But the parties seem to have treated the amendment as a pleading in the case, and the only allegation of fact contained in it, i. e., the payment of debts by the executors, is covered in the written stipulation of facts submitted to the court by both sides, without any objection noted by the defendants as to relevancy. I will therefore treat the amendment as being part of the pleadings in the case.

Stat. 315]; Revenue Act 1924, § 1009 [26 USCA § 105 et seq.]; Revenue Act 1926, § 1109 [26 USCA § 105 et seq.]), and it did not expire until July 28, 1926. The plaintiff is therefore entitled to the relief prayed for, both against the executor who was served and against the estate assets in the hands of the trustee, unless the special matters pleaded by the defendants have merit.

■■ 1. It is said that the collector should have made out a return for the estate, and that, since this was not done, the suit cannot be maintained. This argument is derived from section 405 of the Revenue Act 1918 (40 Stat. 1099), to the effect that, where no return is filed by the executor or where the return filed by him contains a false or incorrect statement, the collector shall make a return and the Commissioner shall make an assessment on such return. There is no substance in the argument. The administrative procedure outlined in section 405 is not exclusive. It is only one of several methods available for collection of the tax. The failure of the collector to make a return under this section was relied upon by defendants in United States v. Ayer, 12 F.(2d) 194, but was held immaterial by the Circuit Court of Appeals for the First Circuit (see page 197). Moreover, at the time when this suit was started, the 1926 act was in force and was controlling as to the manner of collecting taxes under the 1918 act, though not of course as to the computation of the tax. Revenue Act 1926, § 318 (26 USCA § 1118). The 1926 act contained no direction as to the collector making returns in cases where the return filed by the executor was false or incorrect. For these reasons the fact that the collector did not file a return is of no moment.

■ 2. It is said that the suit fails because there was no assessment of the tax by the Commissioner. Assessment may be a necessary preliminary step to distraint as a means of collecting taxes from persons unwilling to pay, but there can be no question that assessment is not essential where suit is resorted to as the method of forcing payment. United States v. Ayer, supra, and authorities collected there. The defendants point out that the Ayer Case arose before the passage of the 1924 act and the 1926 act. So it did, but that fact does not help the defendants. Whereas the earlier acts did not contain any express provision to the effect that proceedings in court could be brought without assessment, both the 1924 act and the 1926 act declare in so many words that suit to collect an estate tax may be brought without a prior assessment. See Revenue Act 1924, §§ 308(b), 311 (26 USCA § 1102 note, and § 1111 note); Revenue Act 1926, § 310 (26 USCA § 1110).

■ 3. I come now to an argument of greater force. It is urged that the executors are discharged from personal liability because of the application made by them under section 407 of the 1921 act for prompt determination of the tax, followed by the failure of the Commissioner to notify them of any additional tax within one year thereafter. As matter of strict construction, the discharge clause of section 407 does not fit this case; in terms it covers only instances where, after receipt of the application, the Commissioner gives notice of the amount of the tax within the year, where such amount is paid, and where thereafter a further amount is found to be due. The provision is that the executor shall be free from personal liability as to such further amount. But I take it that the words, "the Commissioner, as soon as possible and in any event within one year after receipt of such application, shall notify the executor of the amount of the tax," are mandatory, and that ordinarily the executor is discharged from personal liability where the Commissioner fails to give notice within the year of any deficiency in the tax already paid. Common sense would seem to justify this broader operation of the clause, and I will adopt it.

■ Nevertheless, there are several features in the present case which convince me that the executors were not discharged from personal liability. In the first place, it seems to me that the application made by the executors had no effect upon a tax liability which had accrued under the 1918 act. That act contained no provision whereby executors might apply for a prompt audit and thereby cut short the period of their personal liability. The 1921 act, while it repealed the 1918 act generally, provided that the 1918 act should remain in full force for the assessment and collection of taxes accrued under it. Revenue Act 1921, § 1400 (42 Stat. 320). It was not until the 1924 act that this policy was changed and the practice adopted of having the administrative provisions of later statutes govern cases still open under earlier acts. There was nothing retroactive in the 1921 act, nothing which affected in any way taxes under the 1918 act. The taxation of estates of persons who had died prior to November 23, 1921, was left to be governed

in all respects by the 1918 act. It therefore seems to me that the application made by the executors under the 1921 act was futile.

In the second place, the executors did not file "a complete return," which is the primary requisite under section 407 of the 1921 act. The return was incomplete both as to the gross estate reported and as to the deductions claimed. Among the assets reported was an undivided interest in certain mortgages held in escrow pending determination of taxes in another estate. The return stated that the value of the decedent's interest in the mortgages could not be determined until the taxability of the other estate should be settled, and no figure was inserted in the return as the value of the decedent's interest. (In 1925 the Commissioner fixed the value of the decedent's interest in these mortgages at $66,666.67, which value is conceded to be correct. The addition of this figure to the value of the gross estate accounts for the greater part of the tax deficiency sued for.) The good faith of the executors in listing the property is beyond question, but to my mind a return wherein no value was placed or could be placed upon the decedent's interest in this valuable property, and where no tax was paid on account of it, is not a "complete return." Section 404 of the Revenue Act 1918 (40 Stat. 1099) required that the return set forth "the value of the gross estate," and here the executors themselves stated in their return that the value of the gross estate could not be set forth. Nor was the return a complete one as to deductions. Several of the deductions were estimated, which was doubtless the best the executors could do at the time. The fact remains, however, that one of the matters which apparently caused the long delay in the audit was the effort of the Commissioner to obtain more specific information as to these estimated deductions. The executors themselves, in their letter to the Commissioner of July 16, 1923, in effect admitted that further information as to the deductions was necessary as an amendment to the original return. The return being "incomplete" in these respects, section 407 of the 1921 act has no bearing upon the case.

In the third place, the demand for prompt audit was waived by the executors. The Commissioner sought their co-operation in completing an early audit, but did not obtain it. While the Commisioner might have ignored all estimated deductions, and thus have completed his audit within one year, he seems to have delayed his audit in order to do full justice to the estate. As late as July, 1923, the executors promised to furnish complete supplemental data in a few weeks. There is no question that the delay was beneficial to the estate, for in 1925 the executors asked for and were given the benefit of deductions which had not been made at the expiration of one year after December 7, 1921.

For the reasons outlined above, I have reached the conclusion that the executors did not, by their application for prompt audit and for discharge, clear themselves of personal liability for payment of the tax, and that their defense along this line is unavailing.

4. Finally the defendants urge that this suit cannot be maintained because of certain restrictions imposed by the 1926 act upon the right of the United States to commence suits to collect deficiencies in estate taxes. The general proposition is beyond dispute that the United States may maintain a suit to collect unpaid revenue, unless another remedy has been expressly made exclusive. Dollar Savings Banks v. United States, 19 Wall. 227, 22 L. Ed. 80; United States v. Nashville, C. & St. L. Ry. (C. C. A.) 249 F. 678; United States v. Ayer, supra. It is also beyond dispute that, prior to the passage of the 1926 act, the United States had the right to institute suits at law or in equity to collect unpaid estate taxes at any time after they fell due, subject of course to any applicable statute of limitation. One may search the 1916 act (39 Stat. 756), the 1918 act, the 1921 act, and the 1924 act, from beginning to end, without turning up any condition or restraint upon such right. In the 1926 act, however, there are certain restrictions upon the power to commence suits for the collection of estate taxes. The important section in this connection is section 308 (a) of 1926 act (26 USCA § 1101), which provides that the Commissioner on determining a deficiency may send notice thereof to the executor, and that the executor shall have the right, within sixty days, to file a petition with the Board of Tax Appeals for redetermination of the deficiency, and then goes on to say: "No assessment of a deficiency in respect of the tax imposed by this chapter and no distraint or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the executor, nor until the expiration of such 60-day period, nor, if a petition has been filed with the board, until the decision of the board has become final."

It will be observed that section 308(a) is confined to deficiencies in estate taxes under the 1926 act. Section 318(a) of 1926

act (26 USCA § 1118(a), however, assimilates the procedure in collecting estate taxes under earlier acts to the procedure in the case of deficiencies under the 1926 act. And section 316 (26 USCA § 1119) provides that the liability of transferees (including heirs, legatees, distributees, and devisees) for estate tax under any act shall be assessed, collected, and paid in the same manner as indicated in the case of a deficiency under the 1926 act.

The purpose of these provisions is plain. Congress had already in 1924 created the Board of Tax Appeals and had given taxpayers the right to appeal to the Board from deficiencies determined by the Commissioner. But there was nothing in the 1924 act which prevented the United States from bringing suit at any time to collect the tax. In broadening the jurisdiction of the Board in 1926, Congress saw fit to provide that, until the executor had waived his right to lay the matter before the Board, the collection of the tax should be held in abeyance and there should be no assessment, distraint, or suit to collect the deficiency. See 26 USCA § 1211 et seq.

So far as the executors in this case are concerned, these sections of the 1926 act furnish no defense. As to them the Commissioner complied with the conditions precedent to the commencement of suit. He gave them written notice of deficiency, and he waited more than sixty days before instituting this suit. They filed no petition with the Board. They were therefore subject to suit in the United States District Court at the time this suit was commenced.

As to the trustee, however, the Commissioner did not wait the required period. He commenced suit within ten days after the first notice of deficiency served upon the trustee. If this were a suit to establish liability against the trustee as a transferee of estate assets, I would be inclined to hold that section 316(a), 26 USCA § 1119(a), read in connection with section 308(a), was a bar to maintenance of a suit. See Phillips v. Commissioner (C. C. A.) 42 F.(2d) 177, 179. It should be noted, however, that the contrary seems to have been held in two cases in other circuits which arose under the companion sections dealing with liability of transferees for income taxes, sections 274(a) and 280 of act of 1926 (26 USCA §§ 1048, 1069). United States v. Greenfield Tap & Die Corp. (D. C.) 27 F.(2d) 933; United States v. Updike (D. C.) 25 F.(2d) 746, affirmed in (C. C. A.) 32 F.(2d) 1. But this question need not be decided, for this suit is not one to fasten liability upon the trustee, and section 316 is not involved. The prayer for relief does not ask that the trustee be held liable for the tax. If we lay to one side the asserted personal liability of the executors, the suit is solely to collect the tax through enforcement of the tax lien upon assets formerly belonging to the decedent. The trustee is a party defendant merely because these assets are now held by it. It is doubtless true that the restriction upon proceedings in court, which appears in section 308(a), applies to a suit to collect a tax through enforcement of lien, as well as to other suits to collect taxes; in fact, section 314 (26 USCA § 1114), which authorizes proceedings in court of this character, expressly declares that collection of a deficiency by this method shall be subject to the provisions of section 308(a). But, as already pointed out, the requirements of section 308 (a) were fully complied with by the Commissioner. As I view the case, therefore, the claim that the 1926 act forbade the bringing of this suit on July 22, 1926, is untenable.

The original bill sought no relief against the executors, although naming them as defendants. It was not until June, 1930, that the amendment was filed, wherein personal liability on their part was asserted. It is not necessary to decide whether the statute of limitations is a good defense under such circumstances, because no such defense has been pleaded.

There will be a decree for the relief prayed for by the United States. The decree will provide that the tax, with interest and costs, be paid out of the estate assets in possession of the trustee, in discharge of the tax lien, and in default of such payment, by the defendant Cruikshank. The plaintiff will submit a decision embodying findings of fact and conclusions of law, in compliance with the new rule of the Supreme Court, on five days' notice, and will thereafter submit a decree.