ERNEST N. MAY, an Executor of the Estate of Irénée duPont, Defendant Below, Appellant,

*vs.*

IRÉNÉE DUPONT, JR., and CRAWFORD H. GREENEWALT, Two of Three Executors of the Estate of Irénée duPont, Plaintiffs Below, Appellees.

*Supreme Court, On Appeal, January 18, 1966.*

' S. *Samuel Arsht* and *David A. Drexler,* of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiffs below, appellees.

H. *Albert Young* and *Bruce M. Stargatt,* of Young, Conaway, Stargatt & Taylor, Wilmington, for defendant below, appellant.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

HERRMANN, Justice: The question on this appeal is whether less than all of the co-executors in the instant case may distribute the residuary estate under 12 *Del.C.* § 2312(b).[1]

The will named three executors, two being the plaintiffs in this cause and the third being the defendant. After providing for the payment of debts, administration expenses, charitable gifts and taxes, the will provided that the residue of the estate be conveyed to the plaintiffs and the defendant as co-trustees under eight separate equal trusts—one for each of the testator's surviving children. The will provided that each child receive the income of the designated trust for life, and that upon the death of any child, his or her trust fund be distributed to that child's surviving issue per stirpes. The will provided that the acts and decision of a majority of the three trustees be binding on all; but there was no such provision as to the acts and decisions of the executors.

---

1. 12 *Del.C.* § 2312 provides:

"§ 2312. Payment of legacies; refusal to pay or deliver; bond

"(a) When there is a specific bequest of a thing in the possession of the testator at his death, and no time is appointed for its delivery, it may be demanded immediately upon the appraisement. Any other legacy, if no time is appointed, shall be payable in one year from the testator's death.

"(b) Payment or delivery of any legacy may be refused if it is apparent that there are not assets for the purpose; and an executor, or administrator, if he knows of any outstanding demand, shall not be obliged to pay or deliver a legacy or distributive share unless the person entitled shall, with sufficient security, become bound to the executor or administrator by a joint and several obligation, in a penalty double the value of the legacy or share, with condition to be void if the person receiving the legacy or share, or his executors or administrators, in case of a deficiency of assets of the decedent for the payment of all the just demands and charges against his estate and all legacies by him duly given, without such share or legacy or part thereof, shall refund and pay to the executor or administrator, or his executors, administrators, or assigns, the sum or value of the legacy or distributive share, with interest, or such portion thereof as justly and lawfully ought to be contributed on occasion of such deficiency.

"(c) If a legacy is demanded before the expiration of the first year from the testator's death, security may be required, although no claim against the estate is known."

Upon the expiration of one year following the testator's death, the plaintiffs, acting as trustees under the will, requested that the executors deliver to them forthwith all the residuary estate, except a comparatively small sum for administrative expenses. The plaintiffs believed such delivery to be in the best interests of the beneficiaries from a tax viewpoint. They tendered as security an instrument entitled a receipt, release and assumption agreement.

In the intervening year, all specific and particular legacies had been fulfilled; all required tax returns had been filed and the taxes shown due thereunder had been paid; all other debts and administration expenses had been paid except comparatively minor ones; and all assets had been reduced to cash or income-producing securities amounting to approximately $40,000,000. No account had been filed by the executors with the Register of Wills, a six-month extension of time having been sought and granted.

The defendant as executor refused to accede to the demand of the plaintiffs as trustees for delivery of the residuary estate, on the ground that Federal and State tax returns had not yet been audited and approved by governmental authorities; that there was a substantial likelihood that additional taxes would be assessed against the estate; that the matter of taxes should be finally settled before distribution of the residuary estate.

The plaintiffs brought an action in the Court of Chancery seeking instructions and a declaration that delivery of the residuary assets to the trustees by the two plaintiff executors would constitute a valid and effective delivery, the dissent of the defendant co-executor and co-trustee notwithstanding. Alternatively, the plaintiffs sought a mandatory injunction to compel the defendant to join in the delivery, if that were found necessary for a valid and effective distribution of the residuary estate.

The Chancery Court held [211 *A.2d* 597] that, upon the passage of a year after the testator's death, 12 *Del.C.* § 2312(b) requires delivery of the residue "once the legatee has made demand (as here) and become bound with sufficient security"; that the provisions of § 2312(b) became mandatory under such circumstances; that

unanimous action by the executors was not necessary for the delivery or for determination of "sufficient security." By its judgment, the Chancery Court declared that "a majority of the executors at least" were empowered to make "effective delivery of the residuary assets * * * pursuant to Section 2312(b) * * * when the requirements of that section have been met." The defendant appeals.

We are not required by the framework of the cause before us to decide whether the executors here could be compelled under § 2312(b) to make delivery of the residue. The question presented by the plaintiffs for instructions and declaratory judgment is whether less than all the executors have the power to make such delivery voluntarily. The judgment below was limited to the question of such power under § 2312(b); and we limit our review to the judgment. Accordingly, we do not pass upon the question of whether the provisions of § 2312(b) would be mandatory under the circumstances of this case. We neither approve nor disapprove, at this time, of the views expressed in the Chancellor's opinions in that connection.[2]

[1, 2] The basic proposition is that in the regular course of the administration of an estate, the act of one co-executor is binding

2. We note in passing certain troublesome problems with respect to that question which were not discussed by the Court below or by counsel: § 2312 evolves from an Act of 1829. 7 *Laws of Delaware,* pp. 483-484. In common parlance then, as well as in a more precise use of language, a "legacy" was distinguishable from a gift of the residue. See *Quincy v. Rogers, 9 Cushing* (Mass.) 291, 297 (1852); 2 *Jarman on Wills* (8th *Ed.*) 1035; 96 *C.J.S. Wills* § 1125a, p. 875. *Query:* Was § 2312 intended to apply to residuary estates? Also, the one year deadline prescribed by §§ 2311 and 2312, while declaratory of the common law, 3 Woerner "The American Law of Administration" § 454, no longer seems consonant with our statutory scheme for the administration of estates, insofar as the distribution of residuary estates is concerned. For example, a period of 15 months is allowed by Statute now for computation and payment of State inheritance taxes (30 *Del.C.* §§ 1330, 1341); a similar period is allowed for filing Federal estate tax returns (26 *U.S.C.A.* § 6075); and, as a practical matter, a period of 18 months is available in most cases for filing a first account with the Register of Wills (12 *Del.C.* § 2301). Compare In re *Brown's Estate, 29 Del.Ch.* 625, 51 *A.2d* 564 (1947). *Query:* Has § 2312 been amended by necessary implication?

on all and one may act for all; but an act not in the regular course of administration may not be performed by less than all co-executors, particularly over the objection of a co-executor. This generally accepted rule was applied in *Sellers v. Joseph Bancroft & Sons Co.,* 25 *Del.Ch.* 268, 17 *A.2d* 831 (1941). We approve it. Compare *Bernhardt v. Luke,* 11 *Terry* 217, 218, 126 *A.2d* 556 (1956). By definition, the word "regular" means uniform in course, practice or occurrence; routine; systematic; customary; not exceptional or unusual; normal. See 76 *C.J.S.* pp. 608-609.

We come, then, to the question of whether a delivery of the residuary assets under § 2312(b) would fall within the category of acts in the regular course of the administration of an estate. We think not.

The Statute makes "sufficient security" a condition precedent to delivery of a legacy upon the demand of the legatee. It seems clear that a valid and effective delivery of a legacy under the Statute is a composite act consisting of two steps: (1) formulation and receipt of "sufficient security", and (2) physical transfer of the gift. The first element is as inherent and essential to a valid delivery as the second. It follows that if the first step requires the concurrence of all co-executors, no delivery under the Statute is legal and proper which lacks such unanimity.

Although specifying that the security to be taken shall be "in a penalty double the value of the legacy", the Statute is silent as to the form of, and the guarantees for, the security. For the amount of the security, the executors must ascertain the value of a residuary estate not yet finally determinable because of an outstanding demand in an uncertain amount. The executors must decide whether the security shall be in the form of cash, securities, refunding bond or otherwise. If a refunding bond, the executors must decide whether surety shall be required; if so, whether it shall be personal or corporate surety; and, if personal, what protective steps shall be taken to assure the surety's continued financial stability.

The security contemplated by § 2312 is for the protection of the creditors and the beneficiaries of the estate, of course; but it is

also for the protection of the executors. For example, each co-executor may be personally liable for State inheritance taxes [30 *Del.C.* §§ 1344(d) and 1505(c)] and Federal estate taxes [31 *U.S.C.A.* § 192 and 26 *U.S.C.A.* § 2204]. The determination of security sufficient to safeguard adequately each co-executor against the possibility of such personal liability, as well as to protect the creditors and beneficiaries of the estate, becomes a difficult and extraordinary problem for executors. We think it clear that the formulation of such security would not be a routine, ordinary and usual function of executors and, therefore, would not be in the regular course of the administration of an estate.

We conclude that unanimous agreement and action by the executors are required for a valid and effective delivery of the residuary estate to the trustees under § 2312(b). Any other conclusion would mean that any one of three executors could make a distribution, after lone approval of the form, the amount, and the surety of the security to be taken—the objections of the other two co-executors, and the possibility of continuing personal liability of each executor for taxes, notwithstanding. This, in our opinion, would be an unreasonable and unfeasible rule to govern the administration of estates.

We find no authority for the "majority of executors at least" rule adopted by the Chancery Court, in the absence of express testamentary provision. An action of executors is either in the regular course of the administration of an estate or it is not. If in the regular course of administration, the act of one executor binds all; if not in the regular course, unanimous action by all executors is required. We find no legal basis for a middle or "majority" rule. The plaintiffs cite in this connection *McDaniel's Estate,* 9 *Pa.Co.Ct.R.* 232 (1890); *Galt v. Davis,* (1925) 56 *App.D.C.* 53, 8 *F.2d* 1012; *In re Greenberg's Estate,* 15 *Ill.App.2d* 414, 146 *N.E.2d* 404, 66 *A.L.R.2d* 1162 (1957). All dealt with the selection of counsel for the estate, as a routine matter of administration; and *Greenberg* involved a testamentary provision specifying majority rule among the executors. By their very nature, these cases are not helpful.

This is not to say that a co-executor may be contumacious and arbitrarily refuse to act with his co-executors in a reasonable

manner. In such situation, the Court of Chancery, of course, may grant appropriate relief under its general jurisdiction over fiduciaries, with proper protective devices for all concerned.

The foregoing conclusions obviate the necessity of deciding the other questions raised by the defendant, except two:

██ The defendant contends that under the *Uniform Stock Transfer Act* (8 *Del.Ch.* § 181 *et seq.*), the stock constituting the bulk of the residuary estate may not be transferred without the endorsement of all co-executors. The record before us is silent as to how the shares were registered. The registration may be in the name of the testator, or of his estate, or of the executors. The rule may differ in various factual situations. 1 *Christy, The Transfer of Stock* (3d Ed.) § 142; 2 *Woerner, "The American Law of Administration"* (3d Ed.) pp. 1153-1154. We decline to pass upon the question *in vacuuo*. And, by counter-petition, the defendant raises the question of whether the requirement of unanimity of executor action in the performance of non-ministerial duties may be inferred from the inclusion of a testamentary provision for majority rule as to the trustees and the absence thereof as to the executors. Such inference must rest upon the premise that the general rule governing co-trustees and co-executors is the same. This is not a sound premise because the general rule governing acts of co-trustees is unanimity. *Bogert, Trusts and Trustees* (2d Ed.) § 12. Therefore, the inference is not permissible. Moreover, as has been demonstrated, the test as to executors is not whether an act is ministerial, but whether the act is in the regular course of the administration of an estate.

For the reasons stated, the judgment of the Court below must be reversed and the cause remanded for further appropriate action.