ERNEST N. MAY, an Executor of the Estate of Irénée duPont,
Respondent and Counter-petitioner Below,
Appellant,

*vs.*

IRÉNÉE DUPONT, JR. and CRAWFORD H. GREENEWALT, two of three Executors of the Estate of Irénée duPont, Petitioners and Counter-respondents Below,
Appellees.

*Supreme Court, On Appeal, April 27, 1967.*

*Motion for Re-Argument Denied, May 23, 1967.*

*H. Albert Young* and *Bruce M. Stargatt,* of Young, Conaway, Stargatt & Taylor, Wilmington, for respondent and counter-petitioner below, appellant.

*S. Samuel Arsht* and *David A. Drexler,* of Morris, Nichols, Arsht & Tunnell, Wilmington, for petitioners and counter-respondents below, appellees.

WOLCOTT, Chief Justice and CAREY and HERRMANN, JJ., sitting.

HERRMANN, Justice: This appeal presents the question of whether the respondent co-executor is justified in refusing to join with his two co-executors, petitioners herein, in the distribution of the residuary estate, to themselves as testamentary trustees, before final tax clearances.

The basic facts of the case appear in our earlier opinion. See 216 *A.2d* 870. On July 9, 1965, soon after the earlier appeal was initiated, the petitioners, as a majority of the executors, delivered the

residuary assets to the trustees on the ground that, because of 12 *Del.C.* § 3525,[1] a transfer at that time was in the best interests of the beneficiaries.

Following remand in the earlier appeal, the petitioners filed a supplemental petition asserting that the respondent's refusal to join in the delivery of the residuary assets was arbitrary, contumacious[2] and unreasonable; and, on that basis, the petitioners prayed that judgment be entered (1) declaring the respondent's consent to the transfer unnecessary and the delivery valid and effective when made; or (2) declaring that the respondent is estopped from denying the validity of the delivery; or (3) requiring the respondent to join in the delivery.

The respondent filed a supplemental counter-petition seeking a mandatory order directing the petitioners to return the assets to the executors on the basis of this Court's rulings in the earlier appeal.

The Chancery Court deferred decision on the respondent's counter-petition pending trial on the merits of the petition. After trial, the Chancery Court held (1) that the matter was before it not under 12 *Del.C.* § 2312 but under the Chancery Court's general juris-

---

1. 12 *Del.C.* § 3525, the so-called Equitable Income Statute provides as follows:

"§ 3525. Interest in lieu of other income on testamentary trusts pending payment or delivery to trustee of trust corpus

"(*a*) Every pecuniary bequest in trust shall, unless otherwise provided in the will making such bequest, bear interest from the date of the testator's death to the date of the payment of such bequest, at the rate of four per cent per annum, and such interest shall be payable by the executor out of the residue of the estate in lieu of any other payments of income or allowances to the person entitled to the income of such trust had such bequest been paid to the trustee thereof immediately upon the death of the testator."

The record shows that the respondent's refusal to join in the transfer of the assets was not premised upon his view of the effect of this Statute. Therefore, the effect of § 3525 is irrelevant to the issue now before this Court.

2. This word was used in our earlier opinion in its dictionary sense; i.e., stubbornly perverse or rebellious; contrary; factious; intractable (see *The Random House Dictionary*); not, as respondent contends, in its strictly legal sense; i.e., wilful disobedience to a judicial order. Compare *duPont v. duPont, Del.*, 216 *A.2d* 674 (1966); *State v. Mirman*, 99 *Ohio App.* 382, 133 *N.E.2d* 796, 800 (1955)

diction over fiduciaries[3]; (2) that the security furnished by the petitioners in connection with the delivery of the assets "is sufficient to fully indemnify the executors, and each of them, against any loss by reason of a possible additional assessment of estate or inheritance taxes"; and (3) that the respondent's conduct is arbitrary, contumacious, and unreasonable because "he is simply standing upon his legal right to prevent the transfer of the residuary assets." Thereupon, the Trial Court entered a judgment declaring that the delivery of the residuary assets by the two petitioners was valid and effective; the supplemental counter-petition was dismissed. The respondent appeals.

The keystone of the respondent's present position is that the transfer of the residuary assets before final tax clearances undermines his duties and powers as executor.

 In our earlier opinion (216 A.2d 870, 872), we confirmed the general rule, controlling unless modified by will, that an act not in the regular course of the administration of an estate requires unanimous action by the executors. The will here involved provides that the acts of a majority of the three trustees be binding on all; but there is no such provision as to the executors. Therefore, the general rule applies to the executors in this case.

██ The respondent asserts that the estate is exposed to a potential liability for additional Federal and State taxes, pointing to a recent claim against the estate by the United States for additional taxes in excess of $34,000,000. That claim remains unsettled. The respondent contends that it is his responsibility and his right[4] as executor to have an effective voice in the disposition of this and any other tax claim against the estate; that by virtue of the delivery of the assets to the trustees, he will be disenfranchised in such determinations because the trustees will "automatically have the right to make tax determinations", and they may act without his concurrence under the majority rule governing the trustees.[5]

---

3. See 216 A.2d 870, 871, 874.

4. Each co-executor may be personally liable for Federal estate taxes [31 U.S.C.A. § 192 and 26 U.S.C.A. § 2204] and for State inheritance taxes [30 Del.C. §§ 1344(d) and 1505(c)].

5. The record shows that the respondent offered to join in the delivery of the residuary assets upon condition that the trustees thereafter adopt a unanimity rule in lieu of the majority rule specified by the will. The petitioners declined.

The respondent takes the same position regarding the determination of reasonable fees for legal services rendered the estate.

For these reasons, the respondent asserts that he is reasonable in his refusal to join with his co-executors in the transfer of the assets to the trustees; that, therefore, his declination so to do is not arbitrary and contumacious.

The respondent does not now question the sufficiency of the security for the protection of the executors, the subject of much concern in our earlier opinion. The security is contested by the respondent on but two grounds: that it is inconsistent with (1) the provision of the will that taxes shall be paid by the executors from the estate, and (2) the duty of the trustees to make unconditional distributions to the remaindermen. It is manifest on the record that these were not the reasons for the respondent's refusal to join in the transfer of assets. Therefore, these contentions are irrelevant to the issue now before us.

■ We find a fundamental fallacy in the respondent's position: with respect to settlement of tax claims against the estate and the determination of proper fees for legal services to the estate, the respondent has not been relieved or deprived of his duties and powers as executor by the delivery of the assets to the trustee. The powers and duties of the executors did not pass to the trustees by virtue of the transfer of assets; and the trustees may not properly engage in any act or function that falls within the scope of the powers and duties of the executors.

■ Executors do not become *functus officio* by delivery of the residuary assets of the estate; indeed, it would appear that, in this State, the office of executor continues even after final settlement of the estate, unless the executor is discharged upon his own request or is removed for cause.

At common law, the office of an executor continued during his lifetime. In *Hulburd v. Commissioner of Internal Revenue*, 296 *U.S.* 300, 56 *S.Ct.* 197, 201, 80 *L.Ed.* 242 (1935), Justice Cardozo set forth the common law scope and duration of an executor's powers, duties, and liabilities as follows:

"By the common law of England an executor was deemed to carry forward the persona of the testator. * * * Unless the appointment was qualified in respect of time, it continued during life. * * * There was no such thing as a discharge upon a showing of *plene administravit*. There was no such thing as a resignation because of mere unwillingness to go on. * * * The power to act might be suspended or revoked through the appointment of a committee or a receiver if the executor was found to be physically or mentally incapable. * * * There might be like relief if he had become insolvent after probate or had disappeared or had misappropriated the assets or otherwise abused his trust. * * * Nothing short of clear necessity would cause him to be ousted. In the absence of peril to the estate, responsibility and power were not to be renounced when once they had been assumed. So the law of England continues even now."

See also 3 *Woerner, The American Law of Administration,* § 751.

■ In this State, it appears that the common law rule governing the duration of the office of executor remains generally unchanged by statute or judicial decision and is preserved by our practice. While there is statutory provision for the discharge of an executor upon his own request (12 *Del.C.* § 1547), there is no statutory provision for other termination of the duties, powers, and liabilities of the office. It follows that neither the authority nor the liability of an executor in this State is terminated by the transfer of residuary assets. Compare *Hulburd v. Commissioner, supra; Annotation,* 8 *A.L.R.,* pp. 175, 185; *Union Market Nat. Bank v. Gardiner,* 276 *Mass.* 490, 177 *N.E.* 682, 79 *A.L.R.* 1512 (1931); In re *Palmer's Estate,* 41 *Ill.App.2d* 234, 190 *N.E.2d* 500 (1963).

■ The determination of tax claims against the estate, and of reasonable legal fees for services rendered to the estate, are estate matters that remain within the authority and responsibility of the executors so long as they continue in office. Accordingly, the respondent is in error in his assumption that the delivery of the assets to the trustees terminate the duty and power of the executors to make tax and legal fee determinations for the estate.

■ In this connection, the respondent contends that the transferee liability provisions of the Federal tax statute (26 *U.S.C.A.* § 6901) will result in the executors being divested of the duty and

power to make tax determinations for the estate. In support of this assertion the respondent relies upon *Schuster v. Commissioner* (9 Cir., 1962) 312 *F.2d* 311; *Coffee Pot Holding Corp. v. Commissioner* (5 Cir., 1940) 113 *F.2d* 415; *Commissioner v. Kuckenberg* (9 Cir., 1962) 309 *F.2d* 202; *Bell v. Commissioner* (3 Cir., 1936) 82 *F.2d* 499; and other similar cases. We disagree. Cases involving transferee liability deal with the collectibility of taxes from a secondary source—not the determination of tax liability in the first instance. None of the cited authorities supports the respondent's premise that, by virtue of the delivery of the residuary assets, the primary authority and responsibility of the executors to determine the tax obligations of the estate are transferred to the trustees. The transferee liability provisions of the Federal tax statute do not relieve executors of the primary duty to determine, and obligation to pay, the taxes owed by the estate. See 26 *U.S.C.A.* pp. 40-83. *E. g., United States v. Cruikshank* (*D.C.N.Y.,* 1931) 48 *F.2d* 352; *Anderson v. Bowers* (*D.C.S.C.,* 1954) 117 *F.Supp.* 884.

▆▆▆ The burden is upon the respondent to show that his refusal to cooperate with his co-executors is reasonable and with good cause. The respondent has failed, in our opinion, to carry that burden.

We conclude that the respondent's reasons for refusing to join in the delivery of the residuary assets are not valid; that he has failed to show good cause for such refusal.[6] We hold, therefore, that the respondent's refusal to join in the delivery constitutes an arbitrary refusal to act with his co-executors in a reasonable manner and an abuse of his discretion as a fiduciary. Compare *Restatement of Trusts* (2d) § 187; *Bogert, Trusts and Trustees* (2d Ed.) § 560.

▆▆▆ Thus, we agree in substance with the ultimate findings and conclusions of the Trial Court, although upon different grounds. But we disagree with the portion of the judgment below declaring valid and effective the delivery of the residuary assets by less than all the executors. It is uncontroverted that, under the general practice

6. We do not decide whether the tax and legal fee determinations in this case are without the regular course of the administration of the estate thus requiring unanimous action by the executors. These questions are not properly before us on this appeal.

locally, residuary estates are not ordinarily distributed until after final tax clearances. Action by the executors inconsonant with such general practice is not within the regular course of the administration of the estate. Under our earlier opinion, unanimous action by the executors is required when such is the case. It thus appears that the judgment below is in conflict with the earlier decision of this Court.

 For this reason, the cause will be remanded with directions to modify the judgment below so as to require the respondent to join in the delivery of the assets to the trustees, in accord with the third prayer of the supplemental petition.

Our conclusions make unnecessary further consideration of the petitioner's contention that, by virtue of 12 *Del.C.* §§ 2312 and 3101, the trustees have now acquired valid title to the assets, beyond challenge by the executors. Implicit in this contention is the proposition that § 2312 applies to residuary estates, a questionable concept as we pointed out in our earlier opinion. See 216 *A.2d* 870, 872, *fn. 2.* We express no further view upon this subject.

As thus modified, the judgment below is affirmed. The dismissal of the respondent's counter-petition is affirmed.

## UPON MOTION FOR REARGUMENT

The petitioners' motion for reargument is denied. However, a request for clarification as to the modification of the judgment below warrants this supplemental statement:

 Because the respondent's reasons for refusing to join in the delivery on July 9, 1965 were the same then as now, and since we have held those reasons invalid, the respondent's refusal to join in the transfer must be viewed as arbitrary and unreasonable as of the date of the transfer. Accordingly, the order directing the respondent to join in the transfer should be entered *nunc pro tunc.*