Dorothy Taylor JONES, Plaintiff,

v.

J. Baker TAYLOR, Jr., et al., Defendants.

Court of Chancery of Delaware,
New Castle.

Submitted Sept. 30, 1975.
Decided Oct. 30, 1975.

John A. Parkins, Jr., of Murdoch & Walsh, Wilmington, for plaintiff.

Samuel R. Russell, of Wilson & Russell, Wilmington, for defendants.

BROWN, Vice Chancellor.

Defendants have moved for summary judgment in this action brought derivatively by the plaintiff, Dorothy Taylor Jones, for the benefit of Taylor Auto Supply, Inc. ("Taylor Auto"). In essence, the complaint alleges that in 1972 the individual defendants, J. Baker Taylor, Jr. and F. Martin Taylor, the brother and cousin of the plaintiff, caused Taylor Auto to convey certain of its assets to the defendant Marbak, Inc. for a grossly inadequate consideration. Marbak is owned and controlled by the individual defendants, who are also the sole officers and directors of Taylor Auto. The complaint further alleges that in this latter capacity the individual defendants have caused Taylor Auto to pay them salaries and other compensation far in excess of the value of their services to the corporation.

Defendants ask for summary judgment on the theory that the plaintiff lacks standing to bring a derivative action because she was not a stockholder of Taylor Auto at the time of the transactions complained of, and has never been a stockholder of Taylor Auto. This point of contention is brought about by the following factors.

Plaintiff is the daughter, and defendant J. Baker Taylor, Jr. is the son, of J. Baker

Taylor and Mary Hazel Taylor, his wife. At the time of his death during the late 1930's, J. Baker Taylor owned of record 700 shares of stock in Taylor Auto, this amount representing 50 per cent of the outstanding stock in the company. (The other 50 per cent is now owned by the defendant F. Martin Taylor.) Under his will dated September 26, 1935, Mr. Taylor left everything to his wife outright, with the exception of his interests in Taylor Auto. As to this he provided that his wife should "get all dividends from Taylor Auto Supply Co. or its selling price as long as she does not marry." In case she remarried, she was to get one-third of the dividends or selling price, his son, J. Baker Taylor, Jr., was to get one-third, and his daughter, the plaintiff, the other one-third.

On January 15, 1938, in an apparent effort to resolve this uncertain status, the plaintiff and her brother, J. Baker Taylor, Jr., entered into a written agreement with their mother, Mary Hazel Taylor, whereby they agreed to convey to her all their right, title and interest in the 700 shares of Taylor Auto stock in return for her agreement to execute a will bequeathing the stock to them in equal shares upon her death. Mary Hazel Taylor executed a will contemporaneous with the agreement so providing. Although she later executed another will in 1948, it still contains a provision by which the stock is bequeathed to her two children in equal shares. Mary Hazel Taylor died on January 9, 1974, with this will in effect, under the terms of which plaintiff and defendant J. Baker Taylor, Jr. are the co-executors of her estate.

Both 8 Del.C. § 327 and Chancery Rule 23.1 make it clear that in order to maintain a derivative suit it must appear by the averments of the complaint that the plaintiff was either a stockholder of the corporation at the time of the transaction of which he complains or that his stock thereafter devolved upon him by operation of law. Defendants argue that in view of the

agreement in 1938, whereby plaintiff unequivocally assigned and transferred all interest or right she might have had in the stock, she could not possibly have had any interest, either legal or equitable, in 1972, which would satisfy the requirements for a derivative suit.

In response, plaintiff maintains that she has standing to sue derivatively since she was the equitable owner of the shares by virtue of the agreement which obligated her mother to execute a will bequeathing one-half of the shares to her. Reasoning that contracts to make a will are enforceable in equity, *Equitable Trust Co. v. Hollingsworth*, Del.Supr., 29 Del. 563, 49 A.2d 325, 327 (1946), plaintiff asserts that her interest was always vested and thus sufficient to satisfy the requirements of § 327. Alternatively, plaintiff argues that the shares have devolved upon her by operation of law since she is a legatee under her mother's will.

It has been generally held under Delaware law that for purposes of a derivative action, the term "stockholder" as employed in Section 327 includes an equitable owner. *Rosenthal v. Burry Biscuit Corp.*, Del.Ch., 30 Del.Ch. 299, 60 A.2d 106 (1948); *Brown v. Dolese*, Del.Ch., 38 Del. Ch. 471, 154 A.2d 233 (1959), *aff'd sub nom., Dolese Bros. Co. v. Brown*, Del. Supr., 39 Del.Ch. 1, 157 A.2d 784 (1960); *Saks v. Gamble*, Del.Supr., 35 Del.Ch. 503, 122 A.2d 120 (1956). Thus, it is evident that in one form or another, stockholder status at the time of the transaction being attacked and during the litigation is essential. *Levien v. Sinclair Oil Corp.*, Del.Ch., 261 A.2d 911 (1969), aff'd, *Sinclair Oil Corp. v. Levien*, Del.Supr., 280 A.2d 717 (1971); *Harff v. Kerkorian*, Del.Ch., 324 A.2d 215 (1974); *Braasch v. Goldschmidt*, Del.Ch., 41 Del.Ch. 519, 199 A.2d 760 (1964). Yet, it is not altogether clear what precise interest will qualify as equitable ownership sufficient to support a derivative action. For example, it has been held that stock kept in a margin account under the terms of which a broker has the right to sell or

repledge stock held for the stockholder entitles its equitable owner to maintain a derivative action. *Saks v. Gamble*, Del.Ch., 35 Del.Ch. 378, 118 A.2d 793 (1955); *aff'd sub nom., Gamble-Skogmo, Inc. v. Saks*, Del. Supr., 35 Del.Ch. 503, 122 A.2d 120 (1956). It is also generally accepted that an equitable owner of stock may sue derivatively in instances where a trust relationship is involved. See *Felsenheld v. Bloch Brothers Tobacco Co.*, W.Va., 192 S.E. 545 (1937). On the other hand, holders of debentures which were convertible into common stock were considered not to have a sufficient equitable interest to sue derivatively in *Harff v. Kerkorian, supra*. I am aware of no Delaware case in which an interest such as the one claimed here, i. e. an expectant legacy enforceable in equity after the testator's death, has been considered under § 327.

■ Turning to the policy behind § 327, it is well recognized that the section was enacted to eliminate strike suits and other abuses which developed along with the derivative suit. See *Henn, Law of Corporations* (2nd Ed. 1970) § 358. The purpose of the rule requiring the plaintiff to be a shareholder at the time of the transaction of which he complains is to prevent what is considered to be a wrong, namely, the purchasing of shares in order to maintain a derivative action so as to attack a transaction which occurred prior to the purchase of stock. *Rosenthal v. Burry Biscuit Corp., supra; Harff v. Kerkorian, supra*. However, the fact that he considered this to be the sole purpose of the statute prompted Chancellor Seitz to conclude in *Rosenthal v. Burry Biscuit* that the Court was free to apply accepted equitable principles in determining whether a party had such an equitable ownership interest in corporate stock as would permit him to maintain a suit to redress alleged wrongs to the corporation. 60 A.2d 111. The Chancellor reiterated this view in *Maclary v. Pleasant Hills*, Del. Ch., 35 Del.Ch. 39, 109 A.2d 830, 833 (1954) when he stated that the statute should not be interpreted so as to "prevent reasonable opportunities to rectify corporate aberrations." Accordingly, § 327 should be liberally construed in situations where its primary purpose will not be frustrated thereby. *Folk, The Delaware Corporation Law* p. 486.

■ In *Equitable Trust Co. v. Hollingsworth, supra*, it was held to be well established that so long as the contract clearly exists in unambiguous terms, supported by a valuable consideration, equity will enforce a contract to make a will, usually by imposing a trust on the property involved. This would seem to imply that the execution of such an agreement and the tender of the consideration called for creates in the prospective legatee an equitable interest in the specific property to be bequeathed. Here there is a written agreement and a will executed contemporaneously therewith —and maintained thereafter as to the dispositive provision called for by the agreement. The consideration would appear to be the transfer of all their then interest by the plaintiff and her brother and their forbearance to make any claim to the stock or its dividends during the lifetime of their mother even if she did remarry. In view of the potential rights surrendered at the time, the fact that Mary Hazel Taylor did not remarry would appear to be of no significance.

In view of this, I am of the opinion that the plaintiff was possessed of a sufficient equitable ownership interest in the Taylor Auto stock in 1972 so as to permit her to maintain the action now, even though her mother was still alive at the time. I hasten to add, however, that it is the contract to make the will which establishes this status, and not merely the existence of a will in 1972, prior to the death of the testatrix, which designated plaintiff as a legatee of the stock. The instant case presents a situation similar to that in *Pennington v. Neukomm*, No. 4172, 1973 (Del.Ch., October 3, 1973), *aff'd mem.*, No. 26, 1974 (Del.Supr., January 3, 1975) upon which plaintiff relies.

In *Pennington*, a separation and property settlement agreement required the defendant husband, at the end of a six-year period, to transfer certain of his stock to his wife, or, if he should sell or dispose of the stock prior to the expiration of the six-year period, then a portion of the value received would be substituted therefor. The plaintiff in *Pennington*, suing derivatively against several defendants, including her ex-husband, was found to have a sufficient equitable interest in the stock by virtue of the agreement to give her standing to maintain a derivative suit. This was so despite the fact that she might never have received the stock itself, that ultimate determination being reposed in her former husband. As stated in that decision,

". . . in one sense of the word [plaintiff] has already purchased the stock by entering into the separation and property settlement agreement with [defendant]. In return for the consideration given by her under this agreement, one of the considerations she received in return was one-half of [defendant's] stock in Del Tech subject to his right to retain it for six years unless he saw fit to dispose of it during that time by sale or merger of the corporation."

Similarly here, plaintiff and her brother had bargained for the eventual ownership of the stock, subject to the right of their mother to retain uncontested ownership of all of it during her lifetime. Her mother's death, though uncertain as to date, was an inevitable event and plaintiff's interest was enforceable after her mother's death. *Equitable Trust Co. v. Hollingsworth, supra.* Although she released all possessory interest in the stock at the time of the agreement, the consideration plaintiff received in return was the right upon her mother's death to receive one-half of the stock or its equivalent in proceeds. I am of the opinion that this, as in *Pennington*, qualifies as the necessary equitable interest to maintain a derivative suit.

I reach this conclusion based not only upon the aforementioned rationale, but also upon considerations of fairness to the parties involved as well as the policy behind the statute. Application of the rule of § 327 here so as to defeat plaintiff's right to sue on behalf of the corporation would lead to an inequitable result since there are apparently no other shareholders of Taylor Auto who would be willing to sue. Obviously, the individual defendants who are the only other shareholders will not bring suit against themselves. And it is also significant that plaintiff did not purchase her shares in order to instigate litigation, the precise evil at which the statute was aimed.

■ Defendants further argue that plaintiff has no standing to maintain this action under the decision of *May v. duPont*, Del.Supr., 42 Del.Ch. 570, 216 A.2d 870 (1966), *rearg. den.*, 229 A.2d 784 (Del. Supr.1967). There it was held that before a co-executor can bring an action on behalf of the estate, he must request the other co-executor to join in, and if the latter declines to do so, the former must apply to this Court for authorization to bring suit on his own. Admittedly, plaintiff has made neither application here. However, she has brought the suit in her own name and not as co-executor, and I have concluded that she has standing to do so. Thus, consideration of this argument of the defendants is unnecessary.

Further, in view of the conclusion reached herein, I make no determination as to the plaintiff's argument that she has standing to bring a derivative action on the theory that her stock interest devolved upon her by operation of law upon the death of her mother.

The motion of the defendants for summary judgment is denied. It is so ordered.