Opinion issued July 28, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00151-CV

———————————

Lloyd P. Webre, Jr., individually and derivatively on behalf of
Texas United Corporation and United Salt Corporation, Appellant

V.

Robert Wayne
Sneed, James H. Tichenor, Fred Wolgel, James F. O'Donnell, Texas United
Corporation, and United Salt Corporation, Appellees



 



 

On Appeal from the 11th District Court

Harris County, Texas



Trial Court Case No. 2009-23093

 



 

O P I N I O N

          Appellant,
Lloyd Webre, appeals the trial court’s dismissal of his suit pursuant to a plea
to the jurisdiction filed by appellees, Robert Wayne Sneed, James H. Tichenor,
Fred Wolgel, James F. O’Donnell, Texas United Corporation (“Texas United”), and
United Salt Corporation (“United Salt”). 
In six issues, Webre argues that the trial court erred in granting the
plea to the jurisdiction and motion to dismiss because (1) Webre, as a
shareholder in Texas United, the beneficial owner of the shares of its wholly
owned subsidiary United Salt, had standing to bring a derivative action against
both companies; (2) the written demand requirements of article 5.14(C) of the
Texas Business Corporations Act (“TBCA”),[1] regarding the procedural
requirements for bringing a derivative suit, do not apply to closely held
corporations; (3) pursuant to TBCA article 5.14(L), rejection-of-demand
procedures that apply to shareholder derivative suits on behalf of corporations
generally do not apply to derivative actions brought on behalf of closely held
corporations; (4) appellees’ argument that Webre is estopped from recovery does
not present grounds for dismissal for lack of standing; (5) the business
judgment rule for shareholder derivative actions set out in article 5.14 and asserted
by appellees as a ground for denying Webre standing to bring suit does not
apply to suits brought on behalf of closely held corporations; and (6) a
determination under article 5.14(L) of whether Webre is entitled to recover damages
directly or whether any recovery ought to be paid to the corporation is not a proper
basis for denying standing.

          We reverse
and remand.

Background

          Texas
United and United Salt are companies in the business of mining, manufacturing,
and selling salt and related activities. 
Texas United is a holding company with six shareholders, and United Salt
is its wholly owned subsidiary.  Webre is
a 24% shareholder in Texas United, and he serves on the boards of directors of
both companies.  Sneed is the President
and CEO of Texas United, Tichenor is the Senior Vice President of Texas United
and also serves on the board of directors for United Salt, Wolgel is the
General Counsel of both United Salt and Texas United, and O’Donnell is the
President and CEO of United Salt.  The individual
appellees also serve as officers for various related companies.  Sneed, Wogel, and Tichenor are officers of a
company referred to by the parties as “Texas Brine,” and Sneed is an officer of
Texas Brine Company–Saltville, LLC. 
Although Texas United and United Salt hold separate board meetings, the
same people serve on the board of directors for both companies: Lloyd Webre
(appellant); his siblings Camille (Webre) Tichenor, Roberta (Webre) Rude, Mary
I. Webre; and spouses and unrelated people, James Tichenor, Arnold J. Webre,
and Robert D. Duboise.

          Webre’s
dispute with Sneed, Tichenor, O’Donnell, and Wolgel (collectively, “the
officers”) arose over United Salt’s acquisition of a salt mining and storage
facility located in Saltville, Virginia (“Saltville Acquisition”).  On April 9, 2009, Webre filed a shareholder
derivative suit against the officers for actions they took regarding the
Saltville Acquisition. 

According to Webre’s pleadings,
officers of United Salt began looking into the purchase of the Saltville
facilities.  Webre alleges that, in the
course of completing this acquisition, the officers made various
misrepresentations to the United Salt board regarding the nature of the
business to be conducted at Saltville and the quality of the salt and the
facilities.  Webre also alleges that the officers
failed to properly investigate various aspects of the Saltville Acquisition,
including costs for drilling brine wells and other financial aspects.  Webre further alleges that the officers
entered into various agreements with other related entities, including Texas
Brine, which it was not authorized or qualified to perform.  He alleges that United Salt’s board of
directors approved the Saltville Acquisition and subsequent related
transactions and spending resolutions based on the misleading and intentionally
incomplete information presented by the officers.

Webre alleges that the officers
breached fiduciary duties owed to Texas United and United Salt by “failing to
fully investigate the Saltville Acquisition and its implications before
obtaining approval for the acquisition from the United Salt Board of Directors”
and “failing to investigate concerns about the Saltville Acquisition brought to
their attention by Webre”; by “failing to disclose all known information about
the Saltville facility and operations to the United Salt and Texas United Board
of Directors”; by entering into various agreements without approval from United
Salt’s and Texas United’s boards of directors and by “failing to inform” the boards
about those agreements; by “exceeding their spending authority without first
seeking Board of Directors approval”; by “entering into contracts which
obligated United Salt to perform services [that] it did not have the experience
or capability to perform” and by “entering into contracts with related entities
that did not have the experience or capability to perform the services the
contract obligated them to perform.”

Webre also alleges that the
officers’ “wrongful actions include breaches of the duty of loyalty and utmost
good faith, the duty of candor, the duty to act with integrity of the strictest
kind, the duty of fair, honest dealing, and the duty of full disclosure.”

Additionally, Webre has pled a
cause of action for fraud, alleging that the officers “made repeated false representations
regarding the Saltville Acquisition to the Board of Directors of United Salt
and Texas United” and that they “manipulated the financial records and pro
forma accounting analyses relating to the Saltville Acquisition.”  Webre alleges that these misrepresentations
were “material and intended to induce the Board of Directors of United Salt and
Texas United to approve resolutions relating to the Saltville Acquisition” and
were justifiably relied upon by the boards.

Webre alleges that, as a result of
these breaches of fiduciary duty and fraudulent acts, Texas United and United
Salt were both harmed.  Specifically, he
alleges that the companies suffered losses due to problems that “could have
been alleviated through proper planning and proper use of resources,” that both
companies lost profitability, and that the misrepresentations led to higher
performance bonuses to the officers than would have been justified under more
accurate financial forecasts for the companies.

Webre filed suit on behalf of himself,
individually, and on behalf of Texas United and United Salt, derivatively, on
April 9, 2009, against O’Donnell, Sneed, Wolgel, and Tichenor.  O’Donnell, Sneed, and Wolgel filed pleas to
the jurisdiction arguing that Webre lacked standing to bring his suit because
he is not a shareholder of United Salt, he had not filed a written demand
letter as required by TBCA article 5.14(C), and “justice” did not require him
to bring a direct action under TBCA article 5.14(L).

Texas United and United Salt
intervened as defendants on June 9, 2009, and filed their “Special Exceptions,
Motion to Dismiss, Motion for Summary Judgment, or in the alternative, Plea in
Abatement” arguing that Webre lacked standing to bring his suit because he is
not a shareholder of United Salt; his suit is a “double derivative” suit which
he lacks standing to bring; he lacks authority from the corporations to sue;
his prior demands as a director preclude standing; he lacks standing to sue under
the business judgment rule; he is estopped from suing due to his receipt of
benefits from the Saltville Acquisition; and he lacks standing to sue under
article 5.14(L) because his suit is “unjust and inequitable.”

Tichenor later filed his own plea
to the jurisdiction and motion to dismiss arguing that Webre lacks standing to
bring his claims because he did not file a written demand pursuant to TBCA
article 5.14(C) and he is not a shareholder of United Salt.  Tichenor’s plea also incorporated the
pleadings of the other defendants.

The trial court granted the pleas
to the jurisdiction and motions to dismiss “due to [Webre’s] lack of
standing.”  Following its orders
dismissing all of the defendants in this case, the trial court entered final
judgment on November 23, 2009, and this appeal followed.

Standing in a Derivative Suit

All of Webre’s issues assert that
the trial court erred in finding that he did not have standing to bring his
claims.

A.      Standing Generally

          Standing
is implicit in the concept of subject-matter jurisdiction, and subject-matter
jurisdiction is essential to the authority of a court to decide a case.  Tex.
Ass’n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 443 (Tex.
1993).  Thus, standing is never presumed,
cannot be waived, and can be raised for the first time on appeal.  Id.
at 443–45.  We review standing under the
same standard by which we review subject-matter jurisdiction generally.  Id. at
446.  Whether the trial court has
subject-matter jurisdiction is a question of law that we review de novo.  Tex. Dep’t of Parks & Wildlife v.
Miranda, 133 S.W.3d
217, 226 (Tex. 2004).

A plea to the jurisdiction is a
dilatory plea that is intended to defeat a cause of action regardless of
whether the claims asserted have merit.  Bland Indep. Sch. Dist. v. Blue, 34
S.W.3d 547, 554 (Tex. 2000).  The pleader
must allege facts that affirmatively demonstrate the trial court’s jurisdiction
to hear the case.  Tex. Ass’n of Bus., 852 S.W.2d at 446.  If a plea to the jurisdiction challenges the
existence of jurisdictional facts, as here, we consider relevant evidence
submitted by the parties when necessary to resolve the jurisdictional issues
raised.  See Bland, 34 S.W.3d at 555. 
“When the consideration of a trial court’s subject matter jurisdiction
requires the examination of evidence, the trial court exercises its discretion
in deciding whether the jurisdictional determination should be made at a
preliminary hearing or await a fuller development of the case, mindful that
this determination must be made as soon as practicable.”  Miranda,
133 S.W.3d at 227.  If the jurisdictional
challenge implicates the merits of the plaintiff’s cause of action and the plea
to the jurisdiction includes evidence, then the trial court must determine if a
fact issue exists.  Id.  In reviewing the trial
court’s determinations, we take as
true all evidence favorable to the nonmovant and indulge every reasonable
inference and resolve any doubts in the nonmovant’s favor.  Id.
at 228.  If the relevant evidence is
undisputed or fails to raise a fact question on the jurisdictional issue, the
trial court rules on the plea to the jurisdiction as a matter of law.  Id.  However, if the evidence creates a fact
question regarding the jurisdictional issue, then the trial court cannot grant
the plea to the jurisdiction, and the fact issue will be resolved by the fact
finder.  Id. at 227–28.  After a
defendant asserts and supports with evidence that the trial court lacks
subject-matter jurisdiction, the plaintiff is required, when the facts underlying
the merits and subject-matter jurisdiction are intertwined, to show that there
is a disputed material fact question regarding the jurisdictional issue.  Id.
at 228.

          Generally, unless standing
is conferred by statute, a plaintiff must demonstrate that he “possesses an
interest in a conflict distinct from that of the general public, such that the
defendant’s actions have caused the plaintiff some particular injury.”  Williams
v. Lara, 52 S.W.3d 171, 178 (Tex. 2001); see also Tex. Ass’n of Bus., 852
S.W.2d at 446 (“The general test for standing in Texas requires that there (a)
shall be a real controversy between the parties, which (b) will be
actually determined by the judicial declaration sought.”) (internal quotation
omitted).

B.      Law of Stockholder Standing

          A
corporate officer owes a fiduciary duty to the corporation, but, absent some
contract or special relationship, he does not owe a fiduciary duty to an
individual shareholder.  Redmon v. Griffith, 202 S.W.3d 225, 233
(Tex. App.—Tyler 2006, pet. denied). 
Furthermore, “a corporate shareholder has no individual cause of action
for personal damages caused solely by a wrong done to the corporation.”  Id.  Likewise, individual stockholders generally
“have no separate and independent right of action for injuries suffered by the
corporation which merely result in the depreciation of the value of their
stock.”  Perry v. Cohen, 285 S.W.3d 137, 144 (Tex. App.—Austin 2009, pet.
denied) (quoting Wingate v. Hajdik, 795
S.W.2d 717, 719 (Tex. 1990)). 
“Accordingly, an action for such injury must be brought by the
corporation, not individual shareholders.” 
Id.

          Thus,
“to recover for wrongs done to the corporation, the shareholder must bring the
suit derivatively in the name of the corporation so that each shareholder will
be made whole if the corporation obtains compensation from the wrongdoer.”  Redmon,
202 S.W.3d at 234 (citing Faour v. Faour,
789 S.W.2d 620, 622 (Tex. App.—Texarkana 1990, writ denied)).  “[T]he
right to proceed against an officer or former officer of a corporation for
breaching a fiduciary duty owed to the corporation belongs to the corporation
itself.”  Grinnell v. Munson, 137 S.W.3d 706, 718 (Tex. App.—San Antonio
2004, no pet.).  In a shareholder derivative suit, “the
individual shareholder steps into the shoes of the corporation and usurps the
board of directors’ authority to decide whether to pursue the corporation’s
claims.”  In re Crown Castle Int’l Corp., 247 S.W.3d 349, 355 (Tex.
App.—Houston [14th Dist] 2008, orig. proceeding).

          Both
the now-superseded TBCA, and its successor, the Business Organizations Code,
specifically provide for shareholder derivative proceedings.  Tex.
Bus. Corp. Act. Ann. art.
5.14 (current version at Tex. Bus. Orgs.
Code Ann. §§ 21.551–.563 (Vernon Supp. 2010)).  Article 5.14 defines “derivative proceeding”
as “a civil suit in the right of a domestic corporation. . . .”  Id.
art. 5.14(A)(1).  It states that the term
“‘shareholder’ includes a beneficial owner whose shares are held in a voting
trust or by a nominee on the beneficial owner’s behalf.”  Id.
art. 5.14(A)(2).  

Article 5.14 goes on to make
various procedural provisions. 
Specifically, it provides:

B.      Standing.  A shareholder may not commence or maintain a derivative
proceeding unless the shareholder:

 

(1) was a shareholder of the
corporation at the time of the act or omission complained of or became a
shareholder by operation of law from a person that was a shareholder at that
time; and

 

(2) fairly and adequately
represents the interests of the corporation in enforcing the right of the
corporation.

 

C.      Demand.  No shareholder may commence a derivative
proceeding until:

 

(1) a written demand is filed
with the corporation setting forth with particularity the act, omission, or
other matter that is the subject of the claim or challenge and requesting that
the corporation take suitable action; and

 

(2) 90 days have expired from
the date the demand was made . . .

 

D.      Stay;
Discovery.

 

(1) If the . . . corporation commences an inquiry
into the allegations made in a demand or petition and the person or group
described in section H of this Article is conducting an active review of the
allegations in good faith, the court shall stay a derivative proceeding until
the review is completed . . . .

 

(2) If a domestic or foreign corporation proposes
to dismiss a derivative proceeding pursuant to section F of this Article,
discovery by a shareholder following the filing of the derivative proceeding in
accordance with the provisions of this Article shall be limited to facts
relating to whether the person or group described in Section H of this Article
is independent and disinterested, the good faith inquiry and review by such a
person or group, and the reasonableness of the procedures followed by such
person or group in conducting its review and will not extend to any facts or
substantive matters with respect to the act, omission, or other matter that is
the subject matter of the action in the derivative proceeding. . . .

 

E.      Tolling
of the Statute of Limitations.  A
written demand filed with the corporation under Section C of this Article tolls
the statute of limitations on the claim . . . .

 

F.      Dismissal
of Derivative Proceeding.  A court
shall dismiss a derivative proceeding on a motion by the corporation if the
person or group described in Section H of this Article determines in good
faith, after conducting a reasonable inquiry and based on the factors as the
person or group deems appropriate under the circumstances, that the
continuation of the derivative proceeding is not in the best interests of the
corporation.  In determining whether the
requirements of the previous sentence have been met, the burden of proof shall
be on:

 

(1) the plaintiff shareholder, if a majority of the
board of directors consists of independent and disinterested directors at the
time the determination is made or if the determination is made by a panel of
one or more independent and disinterested persons appointed under Section H(3)
of this Article; or

 

(2)
the corporation, in all other circumstances. . . .

 

G.      Commencement
of Proceeding After Rejection of Demand. 
If a derivative proceeding is commenced after a demand is rejected, the
petition must allege with particularity facts that establish that the rejection
was not made in accordance with the requirements of Sections F and H of this
Article.

 

H.      Determination
by Directors or Independent Persons. 
The determination described in Section F of this Article must be made
by:

 

(1) a majority vote of
independent and disinterested directors . . . if [they]
constitute a quorum of the board of directors;

 

(2) a majority vote of a
committee consisting of two or more independent and disinterested directors
appointed by a majority vote of one or more independent and disinterested
directors . . . ; [or]

 

(3) a panel of one or more
independent and disinterested persons appointed by the court on a motion by the
corporation. . . .

 

I.       Discontinuance
or Settlement.  A derivative
proceeding may not be discontinued or settled without the approval of the
court.

 

J.       Payment
of Expenses.  

 

(1) On termination of a
derivative proceeding, the court may order:

 

(a)  the . . . corporation to pay
the expenses of the plaintiff incurred in the proceeding if it finds that the
proceeding has resulted in a substantial benefit to the . . .
corporation;

 

(b) the plaintiff to pay the
expenses of the . . . corporation or any defendant incurred in investigating
and defending the proceeding if it finds that the proceeding was commenced
or  maintained without reasonable cause
or for an improper purpose. . . .

 

Id. art.
5.14(B)–(J).

          Regarding
closely held corporations, article 5.14 provides:

(1) The provisions of Sections B
through H of this Article are not applicable to a closely held
corporation.  If justice requires:

 

(a)  a derivative proceeding
brought by a shareholder of a closely held corporation may be treated by a
court as a direct action brought by the shareholder for his own benefit; and

 

(b) a recovery in a direct or
derivative proceeding by a shareholder may be paid either directly to the
plaintiff or to the corporation if necessary to protect the interests of
creditors or other shareholders of the corporation.

 

(2) For purposes of this
section, a “closely held corporation” means a corporation:

 

(a)  with less than 35
shareholders; and

 

(b) that has no shares listed on
a national securities exchange or regularly quoted in an over-the-counter
market by one or more members of a national securities association.

 

Id. art.
5.14(L).

However, a shareholder may bring a
cause of action to recover damages for wrongs done to him individually when a
wrongdoer violates a duty owed directly to the shareholder.  Perry,
285 S.W.3d at 144.  “It is the nature of the wrong, whether
directed against the corporation only or against the shareholder personally,
not the existence of injury, which determines who may sue.”  Redmon,
202 S.W.3d at 234.

C.      Webre’s Standing to File a Derivative Suit
as a Shareholder of Texas United and United Salt

 

          In
his first issue, Webre argues that the appellees’ pleas to the jurisdiction and
motions to dismiss address only his standing to bring suit on behalf of United
Salt but his suit was brought on behalf of both United Salt and Texas United.  He is a 24% shareholder in Texas United, which,
in turn, is a 100% shareholder of United Salt. 


1.    
Webre’s Standing to Bring a
Derivative Suit on behalf of Texas United

          The
breaches of fiduciary duty and fraud alleged in Webre’s petition create a cause
of action for United Salt—Webre’s claims
arising from the Saltville Acquisition allege that United Salt suffered a
direct injury.  See Tex. Ass’n of Bus., 852
S.W.2d at 446; Perry, 285 S.W.3d at
144.

Furthermore, Webre alleges that
Texas United suffered direct harm from the officers’ misrepresentations to its
board following the Saltville Acquisition and as the sole shareholder of United
Salt because of the interrelated nature of the companies and their
management.  He alleges that both Texas
United and United Salt suffered losses due to problems that “could have been
alleviated through proper planning and proper use of resources,” that both
companies lost profitability, and that the misrepresentations led to payment of
higher performance bonuses to the officers than would have been justified under
more accurate financial forecasts for the companies.

Webre is undisputedly a shareholder
in Texas United, which both parties agree is a closely held corporation.  Thus, he has standing as a shareholder to
bring a derivative suit on behalf of Texas United for harm suffered by Texas
United as a result of the officers’ actions.  See
Wingate, 795 S.W.2d at 718–19; Redmon,
202 S.W.3d at 234.

Thus, the question presented to
this Court is whether Webre as a shareholder of Texas United can bring a suit
against the officers on behalf of Texas United’s wholly owned subsidiary,
United Salt.  

2.    
Webre’s Standing to Bring a
Derivative Suit on Behalf of United Salt

Webre argues that, as a shareholder
in Texas United, which is the beneficial owner of the shares of its wholly
owned subsidiary United Salt, he also has standing to bring a derivative action
on behalf of United Salt.  Webre cites Roadside Stations, Inc. v. 7HBF, Ltd., &
Nu-Way Distrib. Co., 904 S.W.2d 927 (Tex. App.—Fort Worth 1995, no writ).  

In Roadside, the court addressed the “question of whether a
stockholder in the parent company can bring a [derivative] suit on behalf of a
subsidiary.”  904 S.W.2d at 930.  The court cited the version of article
5.14(B) in effect at the time,[2] which provided that a
derivative suit can be brought only if “[t]he plaintiff was a record or
beneficial owner of shares . . . at the time of the transaction of which he
complains. . . .”  Id. at 930.  

The Roadside court reasoned:

Stockholders of a
corporation are the equitable owners of the assets of the corporation.  Consequently, 7HBF, as a stockholder with a
fifty percent interest in Nu-Way, Inc., also is an equitable owner of fifty
percent of the stock of Nu-Way Distributing Co. because Nu-Way, Inc. is the
owner of all stock in Nu-Way Distributing Co. 
We agree with the Chancery Court of Delaware that such an equitable
ownership interest gives one standing to bring a derivative suit.  Therefore, we conclude 7HBF has standing to
bring this derivative suit.

 

Id. at 931
(citing Jones v. Taylor, 348 A.2d
188, 190 (Del. Ch. 1975) (stating that, under Delaware law, for purposes of
derivative action, “stockholder” includes equitable owners) (other internal
citations omitted)).

          We
conclude that this same reasoning applies in the instant case.  Webre, as a stockholder in Texas United, is
also an equitable owner of stock in United Salt because Texas United owns all
of the stock in United Salt.  See id. 
Thus, Webre can properly be considered a stockholder for purposes of
bringing a derivative suit on behalf of United Salt.

          The
appellees argue that Roadside does
not apply to this case.  However,
appellees’ argument that the court’s discussion on this issue is “sheer dicta”
is a misreading of the case, as the opinion makes clear that the analysis
recounted above was required to resolve the Roadside
appellant’s second issue.  See id. at 930–31.  Furthermore, appellees’ argument that Roadside applies a different version of
the TBCA is unavailing.  Although Roadside’s version of article 5.14(B)
allowed “beneficial owners” to file derivative suits and the version applicable
here allows a “shareholder” to file derivative suits, the applicable version of
article 5.14(A) does not exclude “equitable owners” from its definition of a
shareholder.  See Tex. Bus. Corp. Act Ann.
art. 5.14(A)(2) (stating only that “‘shareholder’ includes a beneficial owner
whose shares are held in a voting trust or by a nominee on the beneficial
owner’s behalf”); cf. Jones, 348 A.2d
at 190 (stating that, under Delaware law, for purposes of derivative action,
“stockholder” includes equitable owners) (citing Rosenthal v. Burry Biscuit Corp., 60 A.2d 106, 111 (Del. Ch. 1948)
(analyzing purpose of provisions requiring that plaintiff bringing derivative action
be stockholder at time complained-of action occurred, and stating that “the
statute leaves untouched the question as to whether an equitable owner of stock
can maintain a derivative action,” and concluding that “stockholder” was used
“in the sense in which it is used in the common law applicable to proceedings
in equity—whatever that sense is”)).

          Furthermore,
many other jurisdictions recognize the standing of a shareholder of a parent or
holding corporation to bring a suit on behalf of a subsidiary corporation.  “In a ‘double derivative’ action, the
shareholder is effectively maintaining the derivative action on behalf of the
subsidiary, based upon the fact that the parent or holding company has
derivative rights to the cause of action possessed by the subsidiary.”  Blasband
v. Rales, 971 F.2d 1034, 1043 (3rd Cir. 1992) (quoting 13 Charles R.P. Keating, Gail A. O’Gradney,
Fletcher Cyclopedia of Corporations §
5977, at 240 (rev. ed. 1991)); Sternberg
v. O’Neil, 550 A.2d 1105, 1107 n.1 (Del. 1988); see also Brown v. Tenney, 532 N.E.2d 230, 231 (Ill. 1988) (“A
double derivative suit is one wherein a shareholder of a parent or holding
company seeks to enforce a right belonging to a subsidiary of the parent or
holding company.”).  Thus, 

[i]n a double derivative
suit, the shareholder of a holding company seeks to enforce a right belonging
to the subsidiary, and only derivatively to the holding company.  This means that the power to bring suit flows
directly from the injured subsidiary, but both the subsidiary and the holding
company would have to fail, refuse or be unable to redress the injury to the
subsidiary.

 

Brown, 532
N.E.2d at 233; see also Pessin v.
Chris-Craft Indus., Inc., 181 A.D.2d 66, 72 (N.Y. App. Div. 1992) (“Where a
stockholder controls a subsidiary, and there is no independence between the
parent stockholder and the subsidiary . . . double
derivative standing is conferred on the minority shareholders of the
controlling stockholder.”).

          We
sustain Webre’s first issue.

 

D.      Requirement
that Webre Make a Written Demand to Maintain Suit

In his second and third issues, Webre
argues that, to the extent it did so, the trial court erred in finding he had
no standing because he did not make a written demand pursuant to TBCA article
5.14(C) or comply with other procedural aspects of article 5.14.  Webre argues that the plain language of
article 5.14(C) does not require a written request in suits on behalf of
closely held corporations.

Texas United meets TBCA article
5.14(L)’s definition of a closely held corporation—it has fewer than 35 shareholders and is not
listed on any national securities exchange. 
United Salt is the wholly owned subsidiary of Texas United and is also a
closely held corporation.  The plain
language of article 5.14(L) provides that “[t]he provisions of Sections B
through H of this Article are not applicable to a closely held
corporation.”  Tex. Bus. Corp. Act Ann. art. 5.14(L).  Thus, Webre was not required to comply with
the written demand requirement of section (C).

We sustain Webre’s second and third
issues.

Estoppel

In his fourth issue, Webre argues
that he is not estopped from recovery in his suits either by receiving a
benefit from the Saltville Acquisition or by changing his position.  Webre argues that he has not received any
benefit from the Saltville Acquisition because the acquisition has yet to
recover its costs, and he argues that he has consistently objected to the
transactions complained of in the derivative suit.  Webre also argues that estoppel, as an
affirmative defense, is an improper challenge to standing.

The appellees argue that Webre is
estopped from maintaining this suit because he cannot accept the benefits of a
transaction and simultaneously sue to challenge the transaction.  They argue that the Saltville operations have
already become profitable.

Webre and appellees have presented
conflicting evidence and arguments regarding whether the Saltville Acquisition
has become profitable, and if it has, the extent to which its profitability has
benefited Webre and the other shareholders. 
Resolution of this dispute is fact-intensive and goes to the heart of
the merits of this litigation—i.e.,
whether either corporation has an ultimate right to recover—and, thus, disposal of this issue as a matter
of law through a plea to the jurisdiction is improper.  See
Miranda, 133 S.W.3d at 227–28 (trial court may rule on plea to jurisdiction
as matter of law only if relevant evidence is undisputed or fails to raise fact
question on jurisdictional issue). 
Furthermore, quasi-estoppel theories, such as acceptance of benefits,
are not proper grounds for attacking subject-matter jurisdiction.  See
Steubner Realty 19, Ltd. v. Cravens Rd. 88, Ltd., 817 S.W.2d 160, 164 (Tex.
App.—Houston [14th Dist.] 1991, no writ) (holding that quasi-estoppel refers to
certain legal bars, including acceptance of benefits, and precludes party from
asserting, to another’s disadvantage, right inconsistent with position
previously taken); Clark v. Cotton
Schmidt, L.L.P., 327 S.W.3d 765, 770 (Tex. App.—Fort Worth 2010, no pet.)
(quasi-estoppel is affirmative defense); UL,
Inc. v. Pruneda, No. 01-09-00169-CV, 2010 WL 5060638, at *6–7 (Tex.
App.—Houston [1st Dist.] Dec. 9, 2010, no pet.) (mem. op.) (discussing
distinction between pleas to jurisdiction and pleas in bar and holding that
affirmative defenses on merits that pertain to plaintiff’s ultimate right to
recover are pleas in bar, not challenges to court’s power to hear suit, and
proving such affirmative defenses does not entitle defendants to dismissal for
lack of jurisdiction).

We sustain Webre’s fourth issue.

Business Judgment Rule

In his fifth issue, Webre argues
that the business judgment rule for shareholder derivative actions does not
apply to suits brought on behalf of closely held corporations, and, therefore,
this ground does not support the trial court’s judgment dismissing his suit.  

Appellees argue that because Texas
law gives control over business acquisitions and corporate lawsuits to the
company’s board of directors, a dissenting shareholder has no standing to
maintain a derivative suit unless he pleads and proves fraud or self-dealing by
the board.  Appellees argue that Webre
did not plead or prove any fraud or self-dealing by United Salt’s board of directors.  Appellees also argue that Webre lacks
authority from the boards of directors of either United Salt or Texas United to
file this suit and that his suit is contrary to the vote of the lawful majority
actions of both boards of directors and the other shareholders.  We address both of appellees’ arguments.

In the first part of his fifth
issue, Webre argues the trial court could not dismiss his suit for lack of
standing on the basis of his failure to plead and prove fraud.  We agree. 
The notion that a plaintiff is required to prove the merits of his case
in order to prove his standing to bring his claims is internally inconsistent with
and contrary to Texas law.  See Tex. Ass’n of Bus., 852 S.W.2d at
443 (holding that standing is implicit in subject-matter jurisdiction and
subject-matter jurisdiction is essential to authority of court to decide case);
Miranda, 133 S.W.3d at 228 (“We
adhere to the fundamental precept that a court must not proceed on the merits
of a case until legitimate challenges to its jurisdiction have been decided.”).  To be entitled to seek judgment on the merits
of his case, a plaintiff must have standing; therefore, his standing cannot, as
a matter of law, depend on his proof of the merits of his case.

Moreover, Webre alleged that the
boards of directors of both Texas United and United Salt made the relevant
decisions underlying this case based on misrepresentations, fraud, and breaches
of fiduciary duties by the corporations’ officers.  The appellees argue that this is not the case
and that the actions taken by the boards of directors were lawful and based on
sound business judgment.  Resolution of this
dispute is fact-intensive and goes to the heart of the merits of this
litigation, and, thus, disposal of this issue as a matter of law would be
improper.  See Miranda, 133 S.W.3d at 227–28 (trial court may only rule on
plea to jurisdiction as matter of law if relevant evidence is undisputed or
fails to raise fact question on jurisdictional issue).

In the second part of their
response to the fifth issue, appellees argue that Webre lacks standing to bring
suit on behalf of United Salt and Texas United because his allegations
regarding the Saltville Acquisition and his prosecution of this present suit are
contrary to the vote of the majority of both boards of directors.  They rely on Pace v. Jordan and similar cases to support this contention. 

In Pace v. Jordan, this Court analyzed the trial court’s grant of the
defendants’ “demand-refusal summary judgment motion.”  999 S.W.2d 615, 618–19 (Tex. App.—Houston
[1st Dist.] 1999, pet. denied).  The Pace defendants argued that, under article
5.14, the board of directors’ refusal of one shareholder’s demand to file suit
also barred a second shareholder from bringing a derivative suit.  Id.  In the context of article 5.14’s
provisions requiring a written demand to the corporation and requiring
dismissal of a derivative suit if the demand is rejected under the
circumstances outlined in sections (C) through (H) of that article, the Pace court noted that a corporation’s
directors, not its shareholders, have the right to control litigation of
corporate causes of action.  999 S.W.2d
at 622 (citing Tex. Bus. Corp. Act Ann.
arts. 2.02(A)(2), 2.31).  “[T]he
corporation, through its board of directors, determines whether the chances for
successful suit, the costs of maintaining a suit, and other factors militate in
favor of instituting such an action.”  Id. at 623 (citing Cates v. Sparkman, 11 S.W. 846, 848 (Tex. 1889) and Zauber v. Murray Sav. Ass’n, 591 S.W.2d
932, 936 (Tex. Civ. App.—Dallas 1979), writ
ref’d n.r.e., 601 S.W.2d 940 (Tex. 1980) (per curiam)).  Thus, the Pace
court held, “[T]o bring a derivative suit in the right of a corporation, a
shareholder must show that the board of directors’ refusal to act was governed
by something beyond unsound business judgment.” 
Id. (citing Langston v. Eagle Publ’g Co., 719 S.W.2d
612, 616 (Tex. App.—Waco 1986, writ ref’d n.r.e.) and Zauber, 591 S.W.2d at 936). 
“Under the business judgment rule, a shareholder cannot institute a
derivative suit on the corporation’s behalf by merely showing that the board’s
refusal to act was unwise, inexpedient, negligent, or imprudent.”  Id.

However, as we have already
discussed, sections (B) through (H) of article 5.14 do not apply to derivative
suits filed on behalf of closely held corporations.  See Tex. Bus. Corp. Act Ann. art. 5.14(L).[3]  Thus the reasoning in Pace, which relied on those provisions, while applicable then and
now to suits brought by a shareholder on behalf of a corporation that is not
closely held, does not apply to the instant litigation.  See id.[4]  

We sustain Webre’s fifth issue. 

Direct Recovery

Finally, in his sixth issue, Webre asserts
that the appellees’ argument that he is not entitled to a direct recovery under
TBCA article 5.14(L) does not justify the trial court’s ruling dismissing this
case for lack of standing.  We agree.

Article 5.14(L) does not address
standing except to provide that the standing requirements of section (B) do not
apply to closely held corporations.  See Tex.
Bus. Corp. Act Ann. art. 5.14(L). 
The portion of article 5.14(L) relevant to this issue states, 

(1) The provisions of Sections B
through H of this Article are not applicable to a closely held
corporation.  If justice requires:

 

(a)  a derivative proceeding
brought by a shareholder of a closely held corporation may be treated by a
court as a direct action brought by the shareholder for his own benefit; and

 

(b) a recovery in a direct or
derivative proceeding by a shareholder may be paid either directly to the
plaintiff or to the corporation if necessary to protect the interests of
creditors or other shareholders of the corporation.

 

Id. art.
5.14(L)(1).  The plain language of
article 5.14(L) specifically provides that a derivative action brought by a
shareholder of a closely held corporation may be treated by the court either as
a derivative suit or, “[i]f justice requires,” as a “direct action” brought by
the shareholder for his own benefit and that recovery may be paid “either
directly to the plaintiff or to the corporation.”  Id.

A determination of whether Webre is
entitled to recover directly or whether any recovery ought to be paid to the
corporation is not a proper basis for denying Webre’s standing to bring this
suit because he would have standing to bring it regardless of whether he seeks
recovery under subsection (1) or subsection (b) of article 5.14(L)(1).

We sustain Webre’s sixth issue.

Appellees’
Alternate Grounds for Affirming the Trial Court’s Judgment

 

Finally, appellees argue that, even
if we find that Webre has standing to bring this derivative suit on behalf of
Texas United and United Salt, we should affirm the judgment of the trial court
on alternative grounds.  Specifically,
appellees argue that summary judgment in their favor is appropriate because
United Salt’s board of directors and its sole shareholder ratified the acts of
the officers, because the business judgment rule precludes Webre from proving
the merits of his allegations, and because estoppel bars this suit as a matter
of law due to Webre’s acceptance of benefits from the Saltville
Acquisition.  Appellees also argue that
dismissal is proper under their special exceptions, which argued that Webre did
not plead or prove any fraud or wrongdoing by the boards of directors and that Webre
is not entitled to an opportunity to replead.

However, the trial court’s order
dismissing Wolgel, O’Donnell, and Sneed states only that their “Pleas to the
Jurisdiction and Motions to Dismiss are granted due to [Webre’s] lack of
standing.”  The trial court’s order
dismissing Tichenor likewise specifically references his “Plea to the
Jurisdiction and Motion to Dismiss for Lack of Jurisdiction” as the basis for
dismissing Webre’s claims.  The record does
not demonstrate that the trial court ruled on any of the appellees’ other
motions or grounds for dismissal.  Thus,
these issues are not presented for our review. 
See Tex. R. App. P. 33.1(a)(2) (requiring, as prerequisite to
presenting complaint for appellate review, that “the record must show that . .
. the trial court . . . ruled on the request, objection, or
motion. . . .”); In re R.R., 26
S.W.3d 569, 574 (Tex. App.—Dallas 2000, orig. proceeding) (holding that where
trial court had not ruled on other grounds asserted in motion for protective
order, those issues were not ripe for appellate review).

 

 

 

 

 

Conclusion

          We reverse
the judgment of the trial court and remand the case for further proceedings
consistent with this opinion.

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Higley, and Yates.[5]

 











[1]
          The parties cite the Texas
Business Corporation Act ( “TBCA”).  We
note that TBCA article 5.14 was recodified as part of the Texas Business
Organizations Code, effective January 1, 2006. 
See Act of May 13, 2003, 78th
Leg., R.S., ch. 182, §§ 1, 17, 2003 Tex. Gen. Laws 267, 448–51, 597 (current
version at Tex. Bus. Orgs. Code Ann.
§§ 21.551–.563 (Vernon 2007)).  Chapter
402 of the Business Organizations Code provides that for any entity formed
prior to 2006, article 5.14 applies until December 31, 2009, unless the entity
elects to adopt the code prior to that date. 
See Tex. Bus. Orgs. Code Ann. §§ 402.001, .003, .005 (Vernon
2010).  We further note that TBCA article
5.14(L), which is the statutory provision central to this case, was codified as
Business Organizations Code section 21.563 with no substantive changes.  The entities at issue here were formed prior
to 2006, and this lawsuit was filed on April 13, 2009.  Thus, we cite to article 5.14.





[2]
          The version of article 5.14 in
effect at the time the instant suit was filed provided that “[a] shareholder
may not commence or maintain a derivative proceeding unless the shareholder was
a shareholder of the corporation at the time of the act or omission complained
of. . . .”  Tex. Bus. Corp. Act
Ann.
art. 5.14(B).  We also note that the
current provisions of the Business Organizations Code were not substantively
changed when they were recodified.  See Tex.
Bus. Orgs. Code Ann. §§ 21.551, 21.552 (Vernon 2010).





[3]           This law was not changed by subsequent
codification.  See Tex. Bus. Orgs. Code
Ann. § 21.563 (Vernon 2010).

 





[4]           See
Tex. Bus. Orgs. Code Ann. §
21.563; cf. id. §§ 21.552–.559.





[5]           The Honorable Leslie B. Yates, former
Justice of the Fourteenth Court of Appeals, sitting by appointment.