**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

October 4, 2021

John G. Harris, Esquire
Berger Harris LLP
1105 N. Market Street, 11th Floor
Wilmington, DE 19801

Douglas D. Herrmann, Esquire
Troutman Pepper Hamilton Sanders LLP
1313 N. Market Street, Suite 5100
Wilmington, DE 19899

Re: *SDF Funding LLC, et al. v. Stanley B. Fry, et al.,*
C.A. No. 2017-0732-KSJM

Dear Counsel:

I write to request supplemental briefing on the standing argument raised in the defendants' motion for summary judgment.

In brief, the defendants' argument is as follows. It is undisputed that Plaintiff Stuart D. Feldman invested $1 million in Flashpoint Technology, Inc. ("Flashpoint") in 1999 through a wholly owned LLC, Chelsey Capital, LLC ("Chelsey"), and assigned the Flashpoint stock from Chelsey to Plaintiff SDF Funding LLC ("SDF") in March 2015.

Invoking the contemporaneous ownership requirement of 8 *Del. C.* § 327, the defendants argue that SDF lacks standing to challenge the wrongs at issue in Counts I through IV of the plaintiffs' amended complaint that occurred before SDF became a stockholder. The defendants further contend that the plaintiffs may not rely on Feldman's indirect interest in Flashpoint stock to cure this standing defect.

The contemporaneous ownership requirement of Section 327 is not my favorite doctrine. As my colleague has persuasively argued, the contemporaneous ownership

requirement lacks justification, seems historically rooted in anti-Semitism, and calls out for reexamination.[1]  But Section 327 is the law, which I am bound to faithfully apply.

The plaintiffs do not dispute that the contemporaneous ownership requirement deprives SDF of standing to bring Counts I through IV.  They instead argue that the court should find that Feldman has equitable standing to pursue those claims.

No doubt due to word limitations imposed by the Court of Chancery Rules, neither the defendants' nor the plaintiffs' briefs include an extended treatment of the equitable standing doctrine.  As a consequence, I have found myself doing independent research to address this issue.  Days spent doing independent research are a luxury, but they are a luxury that I cannot afford.  I therefore ask that the parties take another stab at developing their respective standing arguments.

Without prejudging the issue, I offer you the benefit of my current thoughts.

As I understand it, the crux of the plaintiffs' argument is that the court should apply the equitable standing doctrine to "look through" the LLC stockholders Chelsey and SDF and grant derivative standing to their sole owner, Feldman.

In support of this proposition, the plaintiffs place considerable weight on a few cases that I view as not providing considerable support for their argument, such as Vice

---

[1] *See generally* J. Travis Laster, *Goodbye to the Contemporaneous Ownership Requirement*, 33 Del. J. Corp. L. 673 (2008) (making the argument); *Urdan v. WR Cap. P'rs, LLC*, 2019 WL 3891720, at *9–10 & n.5 (Del. Ch. Aug. 19, 2019) (Laster, V.C.) (collecting authorities); *Bamford v. Penfold, L.P.*, 2020 WL 967942, at *24 n.18 (Del. Ch. Feb. 28, 2020) (Laster, V.C.) (collecting even more authorities).

Chancellor Marvel's 1969 decision in *Theodora Holding Corp. v. Henderson*[2] and Vice Chancellor Laster's 2015 decision in *In re Carlisle Etcetera LLC*.[3] Both decisions are well reasoned and have some similarities to this case, and Vice Chancellor Laster's discussion of the equitable principles in *Carlisle* is particularly informative, but neither decision provides strong support for the plaintiffs' position.

In *Theodora Holding*, Theodora G. Henderson acquired preferred and common stock in Alexander Dawson, Inc. ("Dawson") from Girard B. Henderson through a separation agreement leading to their divorce.[4] Ms. Henderson later transferred the common stock to a holding corporation and caused the holding corporation to sue her ex-husband for breaching his fiduciary duties as a controlling stockholder of Dawson.[5] The defendants sought dismissal in part on the grounds that the holding company lacked standing under Section 327 because the challenged conduct occurred before the holding company acquired stock.[6]

The court broached and rejected the defendants' standing argument in a footnote, raising two points. First, the court stated that Section 327 "was designed to militate against the wrong of buying into a derivative law suit and should not be allowed to bar an action

---

[2] 257 A.2d 398 (Del. Ch. 1969).

[3] 114 A.3d 592 (Del. Ch. 2015).

[4] 257 A.2d at 399–400.

[5] *Id.*

[6] *Id.* at 400 n.1.

by a stockholder with a long standing equitable interest in a corporation."[7]  Second, and in the ultimate trump, the court observed that the procedural defect could have been easily cured by joining Ms. Henderson, who still owned preferred stock, as a plaintiff.[8]

The plaintiffs here argue that Feldman is like Ms. Henderson—a sole owner of the plaintiff stockholder with an attendant "long-standing equitable interest" such that Section 327 should be deemed satisfied.

In advancing this argument, however, the plaintiffs rely on the first point of the key *Theodora Holding* footnote and ignore the second point that distinguishes this case. Because Feldman does not (and, in fact, *never*) held Flashpoint stock, he lacks Ms. Henderson's trump card—the ability to cure standing defects through intervention. *Theodora Holding*, therefore, is not very instructive on the issue at hand.

In *Carlisle*, the parties formed an LLC.  After the LLC was formed, the petitioner (the "parent") transferred its member interest to a wholly owned subsidiary (the "subsidiary").  The respondent knew of the transfer and treated the subsidiary as a member of the LLC, but the transfer was insufficient to render the subsidiary an LLC member under the Delaware Limited Liability Company Act (the "LLC Act").  The subsidiary and respondent deadlocked at the member and manager level, after which the parent sought

---

[7] *Id.*

[8] *Id.* (stating that, "[h]ad the harsh rule of *Myer v. Myer*, 271 App. Div. 465, 66 N.Y.S.2d 83 [(N.Y. App. Div. 1946)], been invoked, I would have entertained a motion for the joinder of Theodora G. Henderson as a party plaintiff in light of her continuing ownership of preferred stock of Alexander Dawson, Inc.").

dissolution of the LLC. The respondent argued that the parent lacked standing to seek dissolution under the LLC Act because the parent was not a member. The court agreed but found that the petitioner had equitable standing to seek dissolution.

In finding that the parent had equitable standing, the court drew upon the principle that equity attempts "'to . . . ascertain, uphold, and enforce rights and duties which spring from the *real* relations of parties.'"[9] The court observed that the "real" relationship between the parties was akin to a joint venture in which they were equal participants.[10] The court further observed that the "power vacuum created by the deadlock" rendered it impossible for the LLC to act in accordance with the governance structure in its constitutive agreement absent equitable standing.[11]

The plaintiffs here argue that this court, like the court in *Carlisle*, should invoke equitable standing to cure defects resulting from a transfer of equity among related parties.

In advancing their argument, however, the plaintiffs again ignore obvious distinguishing elements of their cited authority. Here, unlike in *Carlisle*, Feldman was not an equal partner. Indeed, Flashpoint never treated Feldman as if he were a stockholder. And Flashpoint does not face an existential crisis if Feldman is not granted equitable

---

[9] *Carlisle*, 114 A.3d at 607 (quoting 2 John Norton Pomeroy, *Equity Jurisprudence* § 378 (emphasis in original)).

[10] *Id.*

[11] *Id.*

standing.  Given the nature of the "real" relationship between the parties here, *Carlisle* provides weak support for the plaintiffs' argument.

The plaintiffs also cite in passing to a host of other Delaware cases, but those cases mainly probe the scope of Section 327's exception for stock that "devolved" on the plaintiff "by operation of law."[12]  Although the contours of this exception are not "satisfactorily defined by the Delaware case law," Delaware courts have applied the exception where stock transfers by some "mechanical or automatic legal process."[13]  The plaintiffs do not argue that Feldman acquired stock by operation of law (or at all).  Thus, these cases provide little instructive value to the issue at hand.

The plaintiffs further cite to federal cases for the proposition that the transfer of property from one wholly owned subsidiary to another wholly owned subsidiary does not result in a change of ownership or control of the property.  But those cases do not stand for

---

[12] *See* Dkt. No. 144 at 40–41 n.23 (citing *Jones v. Taylor*, 348 A.2d 188, 192 (Del. Ch. 1975) (finding derivative standing where the plaintiff received stock upon the death of the plaintiff's mother), *Reis v. Hazelett Strip-Casting Corp.*, 28 A.3d 442, 478 (Del. Ch. 2011) (finding derivative standing where the plaintiff was bequeathed stock), *Shaev v. Wyley*, 1998 WL 13858, at *4 (Del. Ch. Jan. 6, 1998) (finding derivative standing where the plaintiff received shares as a stock dividend), *aff'd*, 719 A.2d 490 (Del. 1998) (TABLE), *Schreiber v. Carney*, 447 A.2d 17, 22 (Del. Ch. 1982) (finding derivative standing where stock devolved by reorganization), *Helfand v. Gambee*, 136 A.2d 558, 562 (Del. Ch. 1957) (finding equitable standing where the plaintiff had been a shareholder in a predecessor entity at the time of the wrongdoing), and *Pennington v. Neukomm*, 1973 WL 463, at *3 (Del. Ch. Oct. 3, 1973) (finding derivative standing where a separation agreement required a husband to transfer certain stock to his wife at the end of a six-year period unless he sold the stock in the interim)).

[13] *See generally* Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate & Commercial Practice in the Delaware Court of Chancery* § 11.03[2] (2021) [hereinafter Wolfe & Pittenger].

that proposition for all purposes. Rather, one of the decisions concluded that a transfer of stock among related parties did not trigger a third party's right of first refusal. The other two decisions concluded that the transfer of stock among related parties did not give rise to a claim of federal securities fraud by the recipient. These cases seem to have absolutely nothing to do with the standing issue before the court.[14]

The plaintiffs likewise cite to a series of cases for the proposition that this court has construed stockholder status for derivative-standing purposes liberally in certain circumstances.[15] For example, Delaware courts have found that a beneficial holder has derivative standing as to stock held in street name,[16] or held in the name of a trustee.[17] Delaware courts have also allowed personal representatives of beneficiaries, such as executors and administrators of estates, to initiate derivative suits on behalf of beneficiaries.[18]

---

[14] *See* Dkt. No. 144 at 42 (citing *Creque v. Texaco Antilles Ltd.*, 409 F.3d 150, 154 (3d Cir. 2005) (analyzing whether a transfer of property among related parties triggered a right of first refusal), *Rathborne v. Rathborne*, 683 F.2d 914, 918–19 (5th Cir. 1982) (analyzing whether transfer of securities from a wholly controlled subsidiary to its parent or between two corporations controlled by the same entity constituted a purchase or sale of securities giving rise to fraud clause under federal securities law), and *Blau v. Mission Corp.*, 212 F.2d 77, 80 (2d Cir. 1954) (same)).

[15] Wolfe & Pittenger § 11.03[2].

[16] *Rosenthal v. Burry Biscuit Corp.*, 60 A.2d 106, 107, 111 (Del. Ch. 1948).

[17] *Brown v. Dolese*, 154 A.2d 233, 239 (Del. Ch. 1959), *aff'd*, 157 A.2d 784 (Del. 1960).

[18] *Gamble-Skogmo, Inc. v. Saks*, 122 A.2d 120, 121 (Del. 1956).

This line of cases, however, does not apply directly. The plaintiffs do not argue that Feldman has derivative standing as a beneficial owner whose stock is held in a voting trust or held by a nominee, such as a broker, bank, or trustee. Nor do the plaintiffs argue that the sole member of an LLC has a "beneficial interest" in the way Vice Chancellor Noble grappled with that concept in *Mangano v. PeriCor Therapeutics, Inc.*[19]

Clearing the clutter of distinguishable case law, it seems apparent that adopting the plaintiffs' argument would result in a brand-new application of the equitable standing doctrine.

Novelty is not necessarily a fatal quality in this context. The Delaware Supreme Court recognized in *Schoon v. Smith* that this court may extend the equitable standing doctrine to address new circumstances.[20] But that doctrine is not without limitation. In *Schoon*, for example, the court declined to extend equitable standing to pursue derivative claims to directors of corporations, reasoning that the doctrine was adopted "to prevent a complete failure of justice on behalf of the corporation" and that no failure of justice was present.[21]

---

[19] 2009 WL 4345149, at *5 (Del. Ch. Dec. 1, 2009) (providing that "'beneficial ownership' is often used to describe the tangible interests one has in securities held in trust or held by a brokerage firm as record owner. In these instances, the 'beneficial owner' is one who holds some equitable right in the securities. This may include the full right to dividends or current income, or the right (perhaps through one's heirs) to take full title based on some future event; or, with securities held in 'street name,' the right to enjoy all benefits of ownership except for raw legal title.").

[20] 953 A.2d 196, 204 (Del. 2008).

[21] *Id.* at 208.

That brings me to the following question: Does "complete failure of justice" serve as the standard for expanding the equitable standing doctrine? If so, what analysis does that standard call for and how have Delaware cases applied it? What level of injustice does our law tolerate? If not a complete-failure-of-justice standard, what is the limiting principle of the equitable standing doctrine? I ask that the parties provide robust descriptions of the equitable standing doctrine that include answers to these questions and then apply those standards in briefing.

It further bears noting that the plaintiffs' argument implicates the minefield of LLC law—an expansive, developing, policy-laden subject matter that the parties' briefs only touch on in passing.[22] When applying the equitable standing doctrine in supplemental briefing, the parties should address what, if any, ripple effects would the plaintiffs' "look through" argument have in the alternative entity arena, where entity separateness is particularly prized.

Additionally, in briefing, the plaintiffs' counsel sought leave to seek a substitute plaintiff representative to pursue Counts I through IV if the standing arguments prove fatal to those claims. What is the defendants' position with respect to this request?

Separately, I received the defendants' letter dated September 29, 2021, enclosing a copy of *United Food and Commercial Workers Union and Participating Food Industry Employers Tri-State Pension Fund v. Zuckerberg*.[23] In that case, the Delaware Supreme

---

[22] *See, e.g.*, Dkt. No. 92 at 33, 37–38; Dkt. No. 149 at 8–9.

[23] -- A.3d --, 2021 WL 4344361, at *15–17 (Del. Sept. 23, 2021); Dkt. No. 163.

Court's recent decision adopted a test for demand futility that eliminates the historical distinction between *Aronson v. Lewis*[24] and *Rales v. Blasband*.[25]

Although each side applied *Aronson* when briefing the demand futility analysis,[26] I do not believe that *Zuckerberg* warrants supplemental briefing. The *Zuckerberg* court noted that the new test was consistent with *Aronson* and *Rales*, stating that "cases properly construing *Aronson*, *Rales*, and their progeny remain good law."[27] Yet, because I am requesting supplemental briefing on other aspects of the pending motions, the parties may supplement their arguments on this issue if they so choose.

I ask that the parties confer on a schedule and word limits for briefing these issues and, assuming that the parties reach agreement, file a stipulated proposed order on the docket for my consideration. I will hold resolution of both the motion for summary judgment and motions to dismiss in abeyance pending receipt of the supplemental briefs.

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Kathaleen St. Jude McCormick
Chancellor

cc:     All counsel of record (by *File & ServeXpress*)

---

[24] 473 A.2d 805 (Del. 1984).

[25] 634 A.2d 927 (Del. 1993).

[26] *See, e.g.*, Dkt. No. 90 at 25–26; Dkt. No. 144 at 98; Dkt. No. 149 at 58.

[27] *Zuckerberg*, 2021 WL 4344361, at *7, *17.